Argued February 5, affirmed February 19, rehearing denied May 3,
motion to recall mandate denied September 24, 1918.

# SCHMID v. THORSEN.*

(170 Pac. 930; 175 Pac. 74.)

Exceptions, Bill of Review.

1. A bill of exceptions to rulings made in settling the original bill
will not be considered.

Landlord and Tenant—Action for Rent—Failure to Give Possession.

2. In action for rent, the defense that the lessor failed to put de-
fendants in possession was not sustained, where they occupied prop-
erty for six years before discovering a slight encroachment upon it,
and thereafter arranged with the lessor for erecting improvements.

[As to landlord's duty to put tenant into possession, see note
in 134 Am. St. Rep. 916.]

Landlord and Tenant—"Eviction"—Condemnation.

3. A city's condemnation of a part of leased premises does not
constitute an "eviction," excusing nonpayment of rent.

Landlord and Tenant—Rental Action—Sufficiency of Evidence.

4. In rental action, evidence that a city would remove its en-
croachment upon part of the property if the lessor would donate a
much more valuable portion for street improvement purposes, which
he refused to do, resulting in condemnation proceedings, held not to
show that the lessor unreasonably delayed settling the controversy
with the city.

Landlord and Tenant—Rental Action—Counterclaim.

5. In a rental action, defendant lessee's counterclaim for street
improvement damages, awarded to lessor in condemnation proceed-
ings then pending upon appeal, was properly excluded.

Landlord and Tenant—Delinquent Taxes—Lessee's Liability.

6. Where lease required the lessee to pay taxes, the lessor may
recover delinquent taxes which were a lien upon the property, but
which he had not in fact paid.

## ON MOTION TO RECALL MANDATE.

Courts—Opinions—Requisites and Sufficiency—"Concise Statement."

7. Under Article VII, Section 4, of the Constitution, providing
that at the close of each term the judges shall file concise written
statements of their decisions, the term "concise statement" means
the conclusion, rather than the reasoning, and the court need not
separately discuss each and every assignment of error.

*On effect of taking property by eminent domain on liability for
rent, see note in 21 L. R. A. 213 and 222.                REPORTER.

Landlord and Tenant—Right to Rent.

8. A lessor cannot recover rent when by his own acts he has deprived the lessee of the beneficial use of the property.

Landlord and Tenant—Right to Rent—Condemnation Proceedings.

9. A lessor is not bound to protect the lessee against condemnation proceedings, and, if part of the premises are taken thereunder, the tenant is nevertheless liable for the rent for the remainder not taken.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 2. Statement by MR. CHIEF JUSTICE McBRIDE.

This is an action to recover rent claimed to be due, according to the terms of a certain lease of Lots No. 1 and 2 Block 315, in the City of Portland, Multnomah County, Oregon, which lease was executed on March 8, 1909, and was to continue in force for a period of twenty years, from March 1st of that year. The rent received was to be $500 per month for the first five years; $600 per month for the next five years, $700 per month for the succeeding five years, and $800 per month for the last five years, payable monthly in advance. The lessees were also to pay all taxes, with certain exceptions as to unpaid taxes for 1908. There was a stipulation that lessees should have the option to purchase the property at any time within the first five years by paying a sum stipulated in the lease, or within the second five years by paying a larger sum, but these stipulations are not involved in this controversy. The lessees were to be permitted to demolish the buildings then situated upon the premises, upon the condition that they should replace them with one or more substantial structures to cost not less than $20,000. It was provided that when the buildings then occupying the premises were demolished for the purpose of erecting new buildings, the rent should be reduced to $300 per month for a period of six months,

while such new buildings were being constructed.  Said lease contained the usual provisions for forfeiture in the event of nonpayment of rent or breach of covenants, and required the lessees to keep the property insured.

The defendants entered into possession of said property and paid rent until May 30, 1913, when the buildings thereon were destroyed by fire.  The property remained idle for a time, the lessor rebating $200 per month of the rent at the request of lessees.  On the twenty-third day of March, 1915, a subsidiary agreement was entered into reciting the fact that the buildings had been destroyed and that the lessor had received the sum of $2,300 insurance which, by the terms of the lease, was to be applied toward the construction of a new building which the lessees required to be constructed at a cost of not less than $20,000; that the lessees being unable to finance the construction of such building requested lessor to loan them his credit and mortgage his property to secure them a building loan, therefore it was mutually agreed that the lessees should endeavor to secure a loan of $38,000 payable six years from March 1, 1915, with interest not to exceed 6 per cent per annum, and that in such case all the parties should join in a mortgage upon the leased property.  Out of this sum $7,000 was to be applied to the payment of a note and mortgage held by the Northwestern Life Insurance Company against the lessor; $6,000 to be paid to the lessor for his own use and $25,000, or so much thereof as might be necessary, to be used in the construction of a two-story building upon the premises according to plans and specifications to be submitted by Whitehouse & Fouilhoux, architects, and to be approved by the parties; lessees were to pay to lessor interest on $32,000 for a period

89 Or.—37

of 14 years. It was agreed that the fund for thé construction of the building should be placed in the hands of H. F. Latourette as trustee, to be by him disbursed to the contractors for the proposed building, when it was discovered that the buildings of Mr. Leadbetter on one side of the lots and a firehouse erected by the city upon the other, encroached about eleven inches upon the premises on the Washington Street side, of all of which defendants were notified by their architects on March 8, 1915, and defendants had full knowledge and notice of this alleged encroachment when the subsidiary agreement was entered into on March 28th. Immediately after the discovery of the encroachment by the city's firehouse, negotiations were begun with the city engineer and commissioner of public works to induce the city to remove the building, or at least to vacate so much of the ground as encroached upon the leased premises. When the matter was called to the attention of the city council it seems to have been suggested that the circumstances were propitious for the city to secure a widening of Washington Street in front of the leased premises and the lot held by the city, by refusing to vacate a small strip 11 inches in width and about 50 feet in length on the west side of the leased premises, in order to compel Schmid to dedicate a strip extending along the entire front of his property on Washington Street and containing 495 feet. The parties, after months of negotiations, were unable to agree and for nearly a year there was a constant probability that the city would attempt the widening of Washington Street at the expense of plaintiff's property. On or about April 30, 1915, the city council formally passed a resolution declaring its intention to make said improvement and published notice to that effect immediately thereafter. Practically the only terms pro-

posed by the city for a settlement during the interim was that plaintiff and defendants should dedicate to the city 495 square feet of property fronting upon Washington Street in return for their vacating about 49 square feet of Schmid's property occupied by the firehouse on the west, to which the city had certainly no moral right and probably no legal right. After discussing the matter *pro* and *con* Schmid declined to entertain this one-sided proposition and the city finally instituted an action to condemn the desired frontage upon Washington Street. When that action was brought the present action for arrears of rent was pending, but it was agreed between the parties that the damages assessed for the taking should be wholly in favor of Schmid, who litigated that action for both his lessees and himself, leaving the final adjustment of their mutual damages to abide the event of that action.

On May 12, 1916, the condemnation action was tried and a judgment condemning the frontage desired by the city was rendered, with damages in favor of Schmid in the sum of $8,000, attorneys' fees amounting to $450, and costs and disbursements. The city appealed to this court from the judgment but later having proceeded to avail itself of the benefits of the judgment by entering upon and improving portions of the condemned property, and this fact being shown to this court by affidavit the appeal was dismissed and the judgment affirmed: *Portland* v. *Schmid,* 82 Or. 465 (161 Pac. 560). Later by an original proceeding in *mandamus* the city was compelled to pay the judgment awarded against it in the condemnation proceedings. Both the affirmation of the original judgment and the judgment in *mandamus* were rendered subsequent to the trial of the present case.

To fully state the issues made by the pleadings would consume more space in the reports than is practicable.

In brief the complaint and supplemental complaint state a cause of action for rent unpaid and delinquent, taxes paid by plaintiff in one instance, and for which his property has become liable to sale in the second instance. The defenses are, that the plaintiff failed to put the defendants in possession of the property leased, this being predicated upon the shortage of .97 of a foot for 50 feet on the west side of the lot. Second, that plaintiff unduly delayed defendants in building upon the property by failing to accede to the city's terms as to dedication of the frontage. Third, that defendants are entitled to counterclaim for the amount of $8,450 adjudged to the plaintiff in the condemnation suit.    AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Ralph R. Duniway.*

For respondent there was a brief over the names of *Messrs. Griffith, Leiter & Allen* and *Messrs. Latourette & Latourette,* with oral arguments by *Mr. Harrison Allen* and *Mr. John Latourette.*

McBRIDE, C. J.—1-4. There is a woeful lack of a clear statement of the contentions of the parties in the briefs and we have given above such a synopsis as will perhaps be sufficient for the purposes of this opinion. The evidence alone, much of it entirely irrelevant, would fill an entire volume of the Oregon Reports and to state the barest outline of it would "dizzy the arithmetic of memory" and encumber the opinion with matter of no permanent value. We have here a bill of exceptions settled by the presiding judge, and then a bill of exceptions to the rulings of the presiding judge in settling the original bill. This latter we decline to consider. If such a practice should be permitted there

would be no end to bills of exceptions and supplemental bills of exceptions, except the industry of counsel in preparing them and the complaisance of the presiding judge in certifying them. The whole defense as to the failure to put defendants in possession was evidently an afterthought which occurred to defendants when after six years of unprofitable occupancy of the premises, they discovered the city was encroaching slightly on the west side of the lot. With full knowledge of this fact they induced plaintiff to pledge his credit and his property for $25,000 to enable them to build upon the premises and the testimony indicates clearly that the delay in building was not caused by the lack of sufficient room to erect a building of the dimensions planned, but by the uncertainty as to whether the city would condemn and appropriate the strip of frontage required to widen Washington Street. It is well established that a condemnation of a part of the leased premises does not constitute an eviction; so the fact that the city began condemnation proceedings and finally carried them to completion, does not furnish defendants any excuse for nonpayment of rent. In fact we do not understand that to be the contention of the learned counsel for defendants. His contention is that plaintiff unduly delayed a settlement of the matter to defendants' injury. So far as delaying the suit was concerned, it is to be remembered that the city was the plaintiff and the condemnation suit was brought to trial in regular course, or presumably so, as it is not contended that Schmid interposed any dilatory defense. As to whether he could have compromised the matter without a suit, it appears the only compromise possible would have been for Schmid to have given 495 square feet of his valuable frontage on Washington Street in exchange for 49 square feet of his own prop-

erty on the west side of his lot, to which the city claimed some sort of piratical right by alleged adverse possession. It was established upon the trial of the condemnation suit that the value of the 495 feet of frontage was $8,000, and conceding that the city had a valid claim to the strip on the west side and that it would be as valuable as frontage, the proposition amounted to requiring Schmid to exchange $8,000 worth of property on his front for $800 worth on the west side. He was not bound to agree to any such a proposition, nor to throw away his property to protect his tenants from the consequences of condemnation, or the delay incident thereto.

As far as delaying defendants in the construction of their building, the evidence indicates that plaintiff made unusual sacrifices to enable them to build. He voluntarily mortgaged his property to secure for them the means to build with, no provision for repayment of the principal being made. His conduct from the beginning was that of a fair and even indulgent landlord, and this is only one of many instances wherein people who bought or leased property in Portland during the boom existing up to 1912, have sought to avoid the consequences of the present dull period by repudiating their bargains for unsubstantial reasons. As shown by the testimony, the defendants have continued in possession of the premises and availed themselves of the exertions and credit of plaintiff to secure money to build, and during the pendency of this action were actually building upon the property, and the real gist of their defense is not a counterclaim for the slightly diminished capacity of the building they were erecting but for the delay occasioned by Schmid's refusal to allow the city to take his frontage without adequate compensation.

5. The court did not err in excluding the counter-claim for the amount of damages awarded Schmid in the condemnation action. That case had been appealed and was pending in this court. The appeal involved other questions than that of damages. A reversal might have left the case in such a position that the city could have abandoned the proposed improvement altogether and the final affirmance here was not upon the merits but upon a technical acceptance by the city of the benefits of the judgment, as evidenced by its entering upon and improving the condemned property. Whatever rights the defendants had in the money awarded to Schmid, and it cannot be contended that they did not have some ultimate right, would not ripen until Schmid had collected the award in due course of law. That he used reasonable diligence in the matter is apparent and that anything in this action will estop or bar defendants from collecting from Schmid, when he collects from the city, whatever share of the damages their interest as lessees entitle them to claim cannot be reasonably asserted.

6. The contention that the court erred in submitting to the jury the question of plaintiff's right to recover for delinquent taxes, which were a lien upon the property, but which he had not in fact paid, is untenable: Jones, Landlord & Tenant, § 420. There were numerous exceptions to the ruling of the court in the admission and rejection of evidence, and also personal remarks and arguments of counsel for plaintiff, some of which were not in good taste and might well have been omitted. The case seems to have provoked in some way a personal antagonism between counsel which is to be regretted, but we find nothing that would have been at all likely to prejudice defendants' case before the jury, which seems to have been a remarkably intelligent and

attentive one as their frequent questions indicate. The charge of the court fairly and fully presented the issues. Errors aggregating the ominous number of 23 are urged and to discuss each one separately would be to extend this opinion beyond the limits which the importance of the question demands. We are satisfied that the trial was a fair one and the verdict fully justified by the evidence, which has been read with great care.

The judgment is affirmed.

AFFIRMED. REHEARING DENIED.
MOTION TO RECALL MANDATE DENIED.

MR. JUSTICE MOORE, MR. JUSTICE McCAMANT and MR. JUSTICE BEAN concur.

---

Denied September 24, 1918.

ON MOTION TO RECALL MANDATE.

(175 Pac. 74.)

*Mr. Ralph R. Duniway,* for the motion.

*Messrs. Griffith, Leiter & Allen* and *Messrs. Latourette & Latourette, contra.*

McBRIDE, C. J.—7. This is a motion to recall the mandate in this case. The matters presented were all considered upon the original hearing and upon the petition for rehearing, but all of the twenty-three assignments of error were not specially noticed in the opinion: *Ante,* p. 575 (170 Pac. 930). Counsel for defendants urges that he has a right under Section 4,

Article VII, of the Constitution, to have each of the assignments separately discussed and passed upon. This section is as follows: "At the close of each term the judges shall file with the Secretary of State concise written statements of the decisions made at that term." We do not construe this provision as requiring the judges to discuss in detail every assignment of error, serious or frivolous, made by counsel on appeal. To do so would entail endless labor upon the court; great additional expense upon the state in the matter of publication, and greatly delay the consideration of cases. The editorial work now consumes a great portion of the time of the court and in the interest of the public the length of opinions should be abridged rather than extended. The term "A concise statement," of a decision looks rather to the conclusion arrived at than to the train of reasoning by which that conclusion was reached.

8, 9. In a communication to the court counsel states that the fundamental question which he desires passed upon is this: "Can a lessor recover rent for the use of property, when he by his own acts is depriving the lessee of the beneficial use of the property." We thought and still think we answered this contention in our original opinion, but as it is short and easily answered we will waive the fact that it comes too late and answer it now. Our answer is "No." But that question is not in this case. Schmid did *not* by his own act deprive the lessees of the beneficial use of the leased property. If this was done it was done by the City of Portland. It proposed to lay out a street over a portion of the property and offered in return for the right to do so, to exchange $800 worth of property, to which it had no moral and probably no legal title,

for $8,000 worth of property which it proposed to take, and when Schmid refused to accept the inequitable bargain, the city commenced condemnation proceedings and finally condemned the property it had demanded. Schmid's crime, in the eyes of counsel, was his refusal to accept this inequitable offer and thereby delaying his lessees in the construction of their building until the condemnation proceedings were concluded. A lessor is not bound to protect his lessee from the result of condemnation proceedings, and a taking of part of the premises under such proceedings does not affect the tenants' liability to pay rent for the remainder not taken: 24 Cyc. 1133, and cases there cited; 16 R. C. L. 946. The rule contended for by counsel would require the lessor to accept any offer, however inequitable, under the penalty of forfeiture of his lease.

As observed by counsel for appellant this proposition is the real meat of the case. Outside of it appellant had no real defense, and consideration of the other errors assigned was unnecessary. We will remark, however, that some of the strictures made by counsel for the plaintiff upon the action of counsel for defendants in advising defendants to withhold rent, were unnecessary and out of taste. The situation was peculiar and the course to be pursued was one upon which able attorneys might well differ, and if we had been of the opinion that this attack affected or could have affected the final result the case would have been sent back for a new trial. But a perusal of the evidence satisfied us the verdict was such as should have been rendered in any event, and it is seldom the case that the trial of one attorney by the other

has any effect upon the jury, except to recoil upon the head of the attorney making it.

The motion to recall the mandate is denied.

Motion Denied.

---

Demurrer to return argued September 10, overruled September 24, 1918.