Argued and submitted April 6, Court of Appeals reversed,
judgment of trial court reinstated July 26, 1983

NAPOLSKI,
*Respondent on Review,*

*v.*

CHAMPNEY,
*Defendant,*
CHAMPNEY,
*Petitioner on Review.*

(CA A23774, SC 29204)

667 P2d 1013

David Morrison, Oregon Legal Services Corp., Roseburg, and Michael H. Marcus, Legal Aid Service, Portland, argued the cause and filed the brief for petitioner on review.

David A. Hilgemann, Salem, argued the cause for respondent on review. On the brief was Donald S. Kelley and Luoma, Kelley, Wolke & Mays, Roseburg.

Before Lent, Chief Justice, and Peterson, Campbell, Roberts, Carson and Jones, Justices.

ROBERTS, J.

### ROBERTS, J.

This is a Forcible Entry and Wrongful Detainer (FED) action brought by a landlord for nonpayment of rent. *See* ORS 105.105 *et seq.* The tenant filed an answer and counterclaims, and tendered into court the amount of rent she considered due. The question presented is whether the landlord is entitled to take possession if the amount of rent adjudged due exceeds the sum awarded the tenant on the counterclaim, even though it does not exceed the amount that was tendered into court. The Court of Appeals held that a tenant in a FED action is entitled to retain possession "only if he recovers damages on his counterclaims that exceed the rent due the landlord." 60 Or App 438, 445, 653 P2d 1311 (1982). We disagree and reverse.

The relevant historical facts are not in dispute. Plaintiff is the owner of the real property here at issue. The property consists of roughly two acres and contains several dwelling units, a barn and related outbuildings, and fenced pasture land. One of the dwellings, the subject of the present dispute, is a mobile home formerly owned by plaintiff.

In May of 1980, in response to a newspaper advertisement, defendant[1] contacted plaintiff to negotiate a purchase of the mobile home. Incident to this discussion, plaintiff offered to rent defendant the present location of the mobile home, including access to and use of the rest of the property, for $100/ month. Part of the agreement, apparently, was that defendant was to maintain the property, fences, and outbuildings. Defendant accepted the arrangement, purchased the mobile home, and moved into possession. This oral rental agreement was not reduced to writing.

Difficulties soon arose between the parties. Plaintiff became dissatisfied with defendant's maintenance of the property and defendant complained about the lack of a written lease. In January, 1981, plaintiff tendered defendant a written rental agreement. Because it deviated in material respects from the parties' oral agreement, however, defendant refused

---

[1] The label "defendant" for purposes of this opinion refers only to defendant Lou Champney. Defendant Claude Champney was a co-purchaser of the mobile home and was a tenant during the initial part of the dispute here. He, however, had moved out prior to the commencement of this action, failed to appear, and was held in default.

to sign.[2] When defendant attempted to make her usual $100 rental payment in March, plaintiff, apparently deeming it insufficient under the written agreement he had tendered, refused to accept it.

In May, 1981, plaintiff filed the first of three FED actions against defendant. That action and its successor were dismissed without prejudice.[3] In August, 1981, plaintiff sent defendant two termination notices: a 24-hour notice for non-payment of rent and a 30-day notice for cause. *See* ORS 105.120(2); ORS 91.886. Thirty days later he filed the present FED action for failure to pay rent of $200/month as per his proffered written rental agreement. Defendant's answer contained a general denial, an affirmative defense and counterclaim of retaliation,[4] and a counterclaim for statutory

---

[2] The trial court's findings state:

"* * * Lou Champney refused to sign the [written] agreement because of variations from the original [oral] agreement. The tendered agreement, dated January 19, 1981, does differ from the original agreement in that it requires a rent of $200.00, requires Defendant to maintain all buildings, requires the Defendant to remove all garbage, including that of other tenants, and requires the Defendant to maintain and protect all outside plumbing. More importantly, the tendered agreement terminated, under its own terms, on April, 1981. The original agreement had no such limitation."

Under ORS 91.875(1) a lessor of a mobile home site is required to provide the lessee with a written rental agreement. The lessee is not, however, obligated to sign any proffered written agreement which substantially deviates from the parties' prior agreement. ORS 91.875(4) and ORS 91.900(2)(b). *See* note 5, *infra*.

[3] All the record discloses is that plaintiff's first FED action was dismissed without prejudice by stipulated judgment on June 26, 1981, and that his second FED action was dismissed when he failed to meet certain procedural requirements.

[4] ORS 91.870 provides:

"In addition to the prohibitions of ORS 91.865, the landlord who rents a space for a mobile * * * home may not retaliate by increasing rent or decreasing services or by bringing or threatening to bring an action for possession after:

"* * * * *

"(2) The tenant has made any complaint to the landlord which is in good faith; [or]

"* * * * *

"(4) The tenant has performed or expressed intent to perform any other act for the purpose of asserting, protecting or invoking the protection of any right secured to tenants under any federal, state or local law."

Under ORS 91.900(1), such retaliatory conduct on the part of a landlord entitles the tenant to a minimum statutory damage award of $200. The trial court rejected defendant's retaliation defense on the ground that this action is based upon nonpayment of rent, *see* ORS 91.865(3)(b). Defendant does not challenge this ruling.

damages under ORS 91.875 for plaintiff's failure to provide a written rental agreement.[5] In addition, defendant tendered into court $900, the amount of rent she considered due under the oral rental agreement of $100/month.

Pursuant to the FED statutes, ORS 105.115(3), *infra,* the trial court resolved the issues and concluded as follows: First, that plaintiff violated ORS 91.875 by failing to provide a written rental agreement and that defendant was accordingly entitled to $100 statutory damages under ORS 91.900(2) on her counterclaim. Second, that defendant was correct that the amount of rent due was $900.[6] Third, that because the total rent then due had been tendered into court, plaintiff was not entitled to possession. And fourth, that as a consequence of the foregoing, defendant was the "prevailing party" and entitled to attorney fees, costs and disbursements under ORS 91.755.[7]

---

[5] ORS 91.875(1) provides:

"Every landlord who rents a space for a mobile * * * home shall provide a written agreement which shall be signed by the landlord and tenant."

ORS 91.900 provides in pertinent part:

"(2)(a) Except as provided in paragraphs (b) and (c) of this subsection, a tenant shall have a cause of action against the landlord for a violation of ORS 91.875(1) * * * for any damages sustained as a result of such violation, or $100, whichever is greater.

"(b) However, the tenant shall have no cause of action if, within 10 days after the tenant requests a written agreement from the landlord, the landlord offers to enter into a written agreement which does not substantially alter the terms of the oral agreement made when the tenant rented the space and which complies with ORS 91.700 to 91.895.

"* * * * *

"(3) Any person who brings an action under subsection (1) or (2) of this section may also recover costs, necessary disbursements and reasonable attorney fees at trial and on appeal as determined by the court."

[6] The trial court implicitly concluded that plaintiff's proffered written agreement had no bearing on the parties' respective rights and obligations because it was not signed by defendant and it deviated substantially from the prior oral agreement. Plaintiff has not challenged this conclusion on appeal.

The requirements discussed here with regard to written rental agreements are specific to mobile and floating homes site rentals and are not applicable to general residential leases. *Cf.* ORS 91.740.

[7] ORS 91.755 provides:

"In any action on a rental agreement or arising under ORS 91.700 to 91.895, reasonable attorney fees at trial and on appeal may be awarded to the prevailing party together with costs and disbursements, notwithstanding any agreement to

Plaintiff appealed, but did not challenge the first two rulings. He contends simply that because defendant's award on the counterclaim was less than the amount of rent due, he is entitled to regain possession and, further, that that makes him the "prevailing party" for purposes of costs and attorney fees. The question thus before us is a narrow one: Which party in an FED action based on nonpayment of rent is entitled to possession if the tenant's counterclaim award is less than the rent adjudged due but where the tenant had prior to trial tendered into court sufficient funds to cover the rent then due?

Resolution of the issue necessitates an examination and application of Oregon's Residential Landlord and Tenant Act (ORLTA), ORS 91.700 *et seq.*, a uniform act adopted in this state in 1973. Or Laws 1973, ch 559. *See* 7A Uniform Laws Annotated 499 (1978).[8] The question is one of first impression before this court, and it is a very important one under the ORLTA as the answer will determine the extent to which, if at all, a tenant can withhold rent to compel a landlord's compliance with the act. Defendant contends that the Court of Appeals' interpretation, by dispossessing the tenant who withholds more rent than the amount of damages the tenant ultimately recovers, effectively precludes tenants' withholding option and thus eviscerates the act.

The ORLTA is without doubt a significant departure from the common law rules which formerly governed the landlord-tenant relationship. Consequently, juxtaposing those

---

the contrary. As used in this section, 'prevailing party' means the party in whose favor final judgment is rendered."

This statute by its own terms does not appear to be applicable to defendant's counterclaim under ORS 91.900(2), which statute contains its own separate and independent attorney fees provision, ORS 91.900(3). *See* note 5, *supra.* Given the result we reach here, however, it is unnecessary for us to resolve the question of how attorney fees and costs would have been apportioned had plaintiff prevailed on the FED claim. Since defendant prevailed on both the issue of possession and her counterclaim for violation of ORS 91.875, the trial court was correct in awarding her these expenses. *See Executive Management Corp. v. Juckett,* 274 Or 515, 547 P2d 603 (1976). *Compare Marquam Investment Co. v. Myers,* 35 Or App 23, 30-31, 581 P2d 545, *rev den* 284 Or 341 (1978).

[8] The statutory scheme that was ultimately enacted in this state differs in several respects from the uniform act. *See* Comment, *The Evolution of the Oregon Residential Landlord and Tenant Act,* 56 Or L Rev 655 (1977); 7A Uniform Laws Annotated 499 (1978). As the Comment points out, however, most of the deviations from the uniform act were made ostensibly "because these sections were felt to be unnecessary or already covered by Oregon law." 56 Or L Rev at 667. In any event, the statutes pertinent here are identical to or closely parallel the corresponding uniform act sections.

rules with the act's provisions is a helpful first step in divining the drafters' and legislature's intent in formulating the statutory scheme.

Landlord-tenant law had its genesis in English feudal real property law.[9] A lease was viewed strictly as a conveyance of an estate in land rather than as a contract. As a consequence, two principles from real property law, disadvantageous to tenants, were transported into landlord-tenant law: *caveat emptor* and the doctrine of independent covenants. Under the first, the landlord's obligations with respect to the premises, absent lease covenants providing otherwise, were generally limited to effecting the conveyance. The landlord was not obligated to ensure that the property leased was habitable or suitable, and was not required to maintain the property during the lease or ensure that it was supplied with services such as water. Moreover, under the doctrine of independent covenants, any obligations placed upon the landlord, either imposed by law or assumed by the lease, were deemed independent of the tenant's, particularly the obligation to pay rent. Hence, notwithstanding that the landlord might be in major breach of some legal obligation with regard to the tenant or the leased premises, the tenant was not excused from the lease or the obligation to pay rent.[10] The dissatisfied tenant was relegated to suing either for damages or for some sort of injunctive relief to compel compliance by the landlord.

■ The limited rights of the tenant vis-a-vis the landlord were reflected in the forcible entry and detainer statutes as they were originally formulated. Such actions were intended to be expeditious and summary proceedings by which a landlord

---

[9] For discussions of the evolution of landlord-tenant law, *see generally* 2 R. Powell, *Real Property* §§ 221, 225 (1977); Donahue, *Change in American Landlord and Tenant Law,* 37 Mod L Rev 242 (1974); Quinn & Phillips, *The Law of Landlord-Tenant: A Critical Evaluation of the Past with Guidelines for the Future,* 38 Fordham L Rev 225 (1969); Comment, *Landlord-Tenant Reform in Oregon,* 16 Willamette L Rev 835, 836-842 (1980).

[10] There was an ameliorative exception to this otherwise harsh general rule which was known as "constructive eviction": If the tenant's possession of the rented premises was so disturbed by unprivileged acts of the landlord that the tenant was deprived of their use, occupation, and enjoyment and was forced to abandon them, the tenant was viewed as effectively "evicted" and his or her obligation to pay rent was discharged. *See Perrigo v. Boehm,* 194 Or 507, 518, 242 P2d 791 (1952); *Schmid v. Thorsen,* 89 Or 575, 585, 170 P 930, 175 P 74 (1918); Annot., 33 ALR3d 1356 (1970).

could dispossess a tenant and regain the premises without being compelled concurrently to litigate the tenant's complaints. Accordingly, in an FED action the only issue was whether the landlord was entitled to regain the premises (*e.g.,* because the tenant was in default of rent), and, except for some limited affirmative and equitable defenses, the tenant was not allowed to counterclaim or interpose the landlord's own defaults in defense.[11]

As society moved from agrarian to predominantly urban, the factual basis underlying landlord-tenant law shifted, and legal and public opinion echoed increasing dissatisfaction with the established rules. This discontent manifested itself in judicial decisions and statutory changes which abrogated, to a certain extent, the doctrines of *caveat emptor* and of independent covenants. Perhaps the clearest examples of this liberalizing trend are the Restatement (Second) of Property (Landlord and Tenant) (1971) and the Uniform Residential Landlord and Tenant Act (1972).

Although this court took some tentative steps towards modernizing Oregon's landlord-tenant law judicially, *see Wright v. Bauman,* 239 Or 410, 398 P2d 119 (1965), it was the legislature which finally effected the change through its adoption of ORLTA, as supplemented by the provisions pertinent here regarding mobile and floating home sites, ORS 91.868-.900. In addition, the FED statutes were amended to reflect tenants' expanded rights under the ORLTA.

As examples of how the ORLTA has altered landlords' and tenants' respective rights and duties, the act affirmatively obligates residential landlords to maintain rental properties in "habitable condition," ORS 91.770, and provides that such obligation is not independent of a tenant's reciprocal obligation to pay rent, ORS 91.750. Further, under ORS 91.800 a landlord's noncompliance with his or her obligations under the act entitles the tenant either to terminate the lease or bring

---

[11] *See, e.g., Menefee Lumber Co. v. Abrams,* 138 Or 263, 270-271, 5 P2d 709 (1932). The United States Supreme Court upheld the validity of Oregon's former FED statutes against a contention that so limiting a tenant's procedural rights in an FED action was violative of due process. *Lindsey v. Normet,* 405 US 56, 92 S Ct 862, 31 L Ed 2d 36 (1972). In the context of commercial leases, outside the purview of the ORLTA, the rule remains that counterclaims are not permitted in FED actions. *Class v. Carter,* 293 Or 147, 150-154, 645 P2d 536 (1982).

an action for damages or injunctive relief or both terminate and bring an action. *See Brewer v. Erwin,* 287 Or 435, 600 P2d 398 (1979); *L & M Investment Co. v. Morrison,* 286 Or 397, 405, 594 P2d 1238 (1979). And under some circumstances, the tenant is entitled to a "repair and deduct" remedy if the landlord fails to maintain an "essential service," ORS 91.805(3).

Of particular relevance here, the ORLTA expressly grants to a tenant the right to assert counterclaims in FED actions for nonpayment of rent. ORS 91.810 provides:

"(1)  In an action for possession based upon non-payment of the rent or in an action for rent when the tenant is in possession, the tenant may counterclaim for any amount, not in excess of the jurisdictional limits of the court in which the action is brought, that he may recover under the rental agreement or ORS 91.700 to 91.900. In the event the tenant counterclaims, the court from time to time may order the tenant to pay into court all or part of the rent accrued and thereafter accruing, and shall determine the amount due to each party. The party to whom a net amount is owed shall be paid first from the money paid into court, and shall be paid the balance by the other party. The court may at any time release money paid into court to either party if the parties agree or if the court finds such party to be entitled to the sum so released. *If no rent remains due after application of this section, judgment shall be entered for the tenant in the action for possession.*

"(2)  In an action for rent when the tenant is not in possession, he may counterclaim as provided in subsection (1) of this section but is not required to pay any rent into court.

"(3)  If the tenant does not comply with an order to pay rent into the court as provided in subsection (1) of this section, the tenant shall not be permitted to assert a counterclaim in the action for possession.

"(4)  When a tenant is granted a continuance for a longer period than two days, and has not been ordered to pay rent into court under subsection (1) of this section, the tenant shall be ordered to pay rent into court under ORS 105.140(2)." (Emphasis added.)

The relevant FED provision, ORS 105.115(3), recognizes a tenant's right to counterclaim and states that in an FED action based upon nonpayment of rent or termination allegedly for cause, the provisions of the ORLTA

"shall be applied to determine the rights of the parties, including:

"(a)   Whether and in what amount rent is due;

"(b)   Whether a tenancy or rental agreement has been validly terminated; and

"(c)   Whether the tenant is entitled to remedies for retaliatory conduct by the landlord as provided by ORS 91.865 and 91.870."

■■      In applying these provisions to the facts at bar, we first emphasize three facts: (1) defendant had not paid her rent,[12] (2) she had a valid claim for damages against plaintiff arising out of his noncompliance with the ORLTA, and (3) she had paid into court all the rent that was due plaintiff. The first fact entitled plaintiff to commmence this FED action, ORS 105.115(2)(a). The second fact entitled defendant to counterclaim for damages, ORS 91.810(1). The effect of the third fact turns upon what the legislature intended when it adopted the last sentence in ORS 91.810(1), the italicized portion quoted above.

The language at issue appears to us unambiguous: if a tenant counterclaims and tenders into court any outstanding rent, the tenant is entitled to retain possession provided the counterclaim award *plus* the tendered rent equal or exceed the amount of rent adjudicated due. This interpretation is in accord with that suggested by several commentators.[13] The Court of Appeals' more restrictive, and more strained, interpretation of this section appears to have been precipitated by a

---

[12] As noted earlier, defendant tendered to plaintiff $100 as her rental payment in March, 1981, but plaintiff refused to accept it, apparently deeming it insufficient. The record does not disclose whether defendant continued to tender the $100 each of the succeeding months prior to the commencement of this FED action. Nor does the record show whether plaintiff ever demanded the correct amount of rent from defendant — his reply alleged that defendant owed him $2,100 in back rent, $1,200 more than the trial court found due. In any event, for purposes here, we will assume that after the March tender defendant "withheld" rent.

[13] *See, e.g.,* Comment, *Landlord-Tenant Reform in Oregon,* 16 Willamette L Rev 835, 865-871 (1980); Watson, *Forcible Detainer in Kentucky Under the Uniform Residential Landlord and Tenant Act,* 63 Ky L Rev 1046, 1064-1065 (1975); Note, *The Uniform Residential Landlord and Tenant Act: Reconciling Landlord-Tenant Law with Modern Realities,* 6 Ind L Rev 741, 761-763 (1973); Marcus, *Landlord/Tenant Rights in Oregon,* 74-76, 117-118 (2d ed 1980). *See also* Multnomah County District Court Rules, chapter VII, § 7.7 (adopted May 22, 1982). The Restatement suggests a similar approach in the absence of a statute. *See* Restatement (Second) of Property (Landlord-Tenant) § 11.3 (1977).

seeming incongruity with the landlord's statutory right to terminate the lease for nonpayment of rent and by a more generalized disapproval of the "withholding" remedy.

■       Under ORS 91.820(2):

"If rent is unpaid when due and the tenant fails to pay rent within seven days the landlord, after 72 hours' written notice of nonpayment and the landlord's intention to terminate the rental agreement if the rent is not paid within that period, may immediately terminate the rental agreement and take possession in the manner provided in ORS 105.105 to 105.165 [the FED statutes]."[14]

As noted earlier, however, the applicable FED statute, ORS 105.115(3), states that in an action for possession based upon nonpayment of rent the provisions of the ORLTA "shall be applied to determine the rights of the parties, including [w]hether and in what amount rent is due [and w]hether a tenancy or rental agreement has been validly terminated[.]" This reference returns us to ORS 91.810(1) and indicates that, for purposes of the ORLTA/FED statutory scheme, a tenant is not in default of rent and a landlord is not entitled to terminate the lease for nonpayment of rent if the tenant has refused to pay the rent because of some default of the landlord's which entitles her to damages and she tenders sufficient funds into court to cover any rent that ultimately may be determined to be due.

■       The net effect of all this is an implicit withholding remedy: if the landlord is in noncompliance with his obligations under the ORLTA to the monetary damage of the tenant, the tenant can withhold rent, and if the landlord commences an FED action the tenant can counterclaim and pay the rent arrearage into court to protect her right to possession. Withholding effectively shifts to the landlord the burden to commence any litigation necessary to determine the parties' rights in the dispute and, further, confronts the landlord with the risk of becoming liable for costs and attorney fees if the tenant "prevails." Withholding at first blush appears to be a rather

---

[14] *See* ORS 91.886(5) which provides:

"Nothing in this section shall limit a landlord's right to terminate a tenancy for nonpayment of rent or other cause stated in ORS 91.700 to 91.895 by complying with ORS 105.105 to 105.165."

formidable weapon in the tenant's arsenal. On closer inspection, however, this withholding remedy is narrowly circumscribed and comports well with the ORLTA's policy of achieving a fair balance between the rights of tenants and landlords.

■　First, because ORS 91.810(1) deals only with a tenant's right to counterclaim for damages for a landlord's noncompliance with his obligations under the rental agreement or the act, the tenant's withholding remedy is correspondingly limited. The statute does not authorize withholding in order to rectify any complaint of the tenant, nor does it permit the tenant to withhold rent because of claims she may have against the landlord unrelated to her rights under the act.

■　Second, the ORLTA expressly provides that, as a prerequisite to the rights and remedies under the act, the party must act in good faith. ORS 91.730. Spurious, frivolous, or improperly motivated counterclaims may not be used to justify a tenant's rent withholding.

Third, if the tenant does have a legitimate complaint under the act, the simplest and most obvious way for the landlord to avoid withholding, and obviate an FED action, is to rectify the default. In the case at bar, for example, plaintiff could have prevented defendant's withholding simply by tendering her, as he was statutorily obliged to do anyway, a written lease conforming to their oral agreement. In this respect, the withholding remedy is an effective method by which a tenant can coerce a recalcitrant landlord into compliance with his statutory obligations without being forced herself to commence litigation.

■　Fourth, assuming that the parties are embroiled in a *bona fide* dispute over whether the landlord is in noncompliance with the act, the rent-into-court scheme set out in ORS 91.810(1) protects the landlord's interests. After the FED action has been commenced and the tenant has counterclaimed, the court "may order the tenant to pay into court all or part of the rent accrued and thereafter accruing" and "may release money paid into court to either party if the parties agree or if the court finds such party to be entitled to the sum so released." Thus, if the tenant counterclaims for a sum less than the rent she acknowledges as due, the court can order

her to pay the accrued rent into court and release to the landlord the undisputed excess.[15] If the tenant refuses to comply with such an order, she forfeits her right to counterclaim, ORS 91.810(3), and will lose possession under ORS 91.810(1) if the court determines that any rent is due.

Finally, the FED process remains rather summary and expeditious and rent withholding will not, in the usual case, deprive the landlord of his money for an appreciable period of time.[16] Ten days after rent default, a landlord can commence an FED action. ORS 91.820(2); ORS 105.115(2)(a). The matter is then to be tried within 15 days. ORS 105.137(5). If the court grants the tenant any continuances longer than two days, the tenant must provide an undertaking or pay the accrued rent into court. ORS 105.140; ORS 91.810(4).

In sum, we conclude that because defendant here had asserted a valid counterclaim against plaintiff under the ORLTA and had tendered into court sufficient funds to cover the rent that was ultimately adjudged due plaintiff, under ORS 91.810(1) she was entitled to retain possession of the premises. Moreover, since she prevailed on both her counterclaim and on the issue of possession, she was also entitled to recover costs and disbursements, and attorney fees.[17] We therefore hold that the trial court was correct in its disposition of this case.

---

[15] The language employed in ORS 91.810(1) is permissive, *i.e.*, the trial court "may" order the tenant to pay rent into court and "may" release some or all of it. *Cf.* ORS 91.810(3), (4). This is evidently to give the trial court some discretion and flexibility based upon the circumstances of the particular case. For example, if the tenant's counterclaim appears meritorious and could exceed the rent conceded due, the trial court may choose not to require the tenant to pay any rent into court. Moreover, even if the counterclaim is less than the rent due, the trial court may choose not to release any money paid into court in order to protect a possible costs and attorney fees award for the tenant.

[16] In that respect, this case is probably exceptional inasmuch as it took over nine months to be finally adjudicated. From the record it appears that the delay was primarily attributable to plaintiff. His first two FED actions were aborted on procedural grounds. *See* n 3, *supra.*

[17] Plaintiff contends that because he was awarded $900 in back rent he was the prevailing party. Defendant, however, never disputed plaintiff's right to the $900; in fact, she voluntarily tendered that sum into court. Rather, she contested his claim to $2,100 in back rent and his prayer for possession. She prevailed on both of these issues in addition to her counterclaim.

We express no opinion as to which party would be the prevailing one if the tenant loses on the counterclaim but nonetheless retains possession by operation of ORS 91.810(1).

The decision of the Court of Appeals is reversed and the judgment of the trial court is reinstated.