Argued and submitted September 16, 2019; decision of Court of Appeals reversed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings February 21, 2020

Janet EDDY
and Rodger Eddy,
*Respondents on Review,*

*v.*

Staci ANDERSON,
*Petitioner on Review,*
*and*

James ANDERSON
and Deborah Rocha,
*Defendants,*

(CC CV15050554) (CA A162867) (SC S066301)

458 P3d 678

Landlords filed an action for unpaid rent and other damages against tenants under the Oregon Residential Landlord and Tenant Act (ORLTA). Tenants counterclaimed for diminution in rental value under ORS 90.360(2), alleging that landlords violated the ORLTA habitability requirements. The trial court dismissed tenants' counterclaim, reasoning that they had not provided landlords with written notice of the alleged violation, that they had been motivated by desire to pay less in rent rather than to remedy any habitability issue, and that they consequently had not acted in good faith, defined in the ORLTA as "honesty in fact in the conduct of the transaction concerned." The Court of Appeals affirmed, reasoning that the trial court's findings regarding tenants' motivation for bringing the counterclaim supported the conclusion that tenants had not acted in good faith. *Held*: (1) The context and history of the ORLTA show that the legislature intended to adopt a narrow, specific, and subjective concept of good faith that depends on whether a party has behaved honestly as to the matter in question, rather than on the party's motivations or whether the party has acted in an objectively reasonable manner; (2) the lower courts were therefore incorrect to the extent that they understood the "good faith" inquiry to depend on tenants' motivation for bringing their counterclaim, rather than on whether they had acted with "honesty in fact"—that is, whether they had brought a claim that they subjectively believed to have merit; and (3) the trial court erred in concluding that tenants were required to first give written notice to landlords before pursuing their counterclaim under ORS 90.360(2), which requires only actual notice.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

_____
* On appeal from Clackamas County Circuit Court, Katherine E. Weber, Judge. 294 Or App 163, 430 P3d 1100 (2018).

Harry Ainsworth, Portland, argued the cause for petitioner on review. Craig P. Colby, Craig P. Colby, Attorney, LLC, Portland, filed the brief. Also on the brief were Harry Ainsworth and Frank Wall, Portland.

No appearance on behalf of respondents on review.

Emily Rena-Dozier, Legal Aid Services of Oregon, Portland, argued the cause and filed the brief on behalf of *amici curiae* Legal Aid Services of Oregon and Oregon Law Center.

Before Balmer, Nakamoto, Flynn, Duncan, Nelson, and Garrett, Justices, and Baldwin, Senior Judge, Justice pro tempore.**

GARRETT, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

** Walters, C. J., did not participate in the consideration or decision of this case.

**GARRETT, J.**

This case requires us to construe the term "good faith" for purposes of the Oregon Residential Landlord and Tenant Act (ORLTA). ORS 90.130 imposes an obligation of good faith on those who are performing or enforcing either a "duty" or an "act" that is "a condition precedent to the exercise of a right or remedy" under the ORLTA. In this case, after defendants (tenants) were sued for collection of unpaid rent, they alleged a counterclaim for damages under ORS 90.360(2) on the ground that plaintiffs (landlords) had not maintained the premises in a habitable condition. The trial court dismissed that counterclaim, reasoning that tenants had failed to provide landlords with written notice of the alleged violation and had acted with "unclean hands." The Court of Appeals affirmed on somewhat different grounds, concluding that, in light of the trial court's findings, tenants had failed to act in good faith for purposes of ORS 90.130 and that their counterclaim was therefore barred. *Eddy v. Anderson*, 294 Or App 163, 178, 430 P3d 1100 (2018). We allowed review and, for the reasons that follow, reverse.

## STATUTORY OVERVIEW

We begin with a brief overview of pertinent provisions of the ORLTA. The ORLTA was enacted in 1973 "to clarify and restate the rights and obligations of tenants and landlords."[1] *L & M Investment Co. v. Morrison*, 286 Or 397, 405, 594 P2d 1238 (1979). Beginning with provisions of general applicability (ORS 90.100 - 90.148), the ORLTA imposes obligations on both landlords and tenants (ORS 90.303 - 90.340), and it spells out their respective remedies (ORS 90.360 - 90.440). One of the basic requirements imposed on landlords is the obligation to maintain premises in a "habitable condition," as provided by ORS 90.320. *Davis v. Campbell*, 327 Or 584, 587-88, 965 P2d 1017 (1998).

Provisions for a tenant's remedies "are found both in the general and in the more specific sections" of the ORLTA. *Brewer v. Erwin*, 287 Or 435, 439, 600 P2d 398 (1979),

---

[1] The ORLTA was originally codified in ORS chapter 91. In 1989, the ORLTA was renumbered to ORS chapter 90. *See* ORS ch 91 (1989) (setting out renumbering).

*overruled on other grounds by McGanty v. Staudenraus*, 321 Or 532, 901 P2d 841 (1995). The general provisions set forth the actions by which a tenant can seek to remedy a landlord's violation of the ORLTA; they also impose obligations on a tenant who brings such an action. For example, ORS 90.125(2) explains that any "right or obligation" under the ORLTA is enforceable by an "action," which ORS 90.100(2)[2] defines to include "recoupment, counterclaim, setoff, suit in equity and any other proceeding in which rights are determined, including an action for possession."

The more specific provisions of the ORLTA explain which remedies are available to a tenant when enforcing a landlord's obligations. As relevant to this case, ORS 90.360 provides a tenant with "two separate and independent remedies" to address a landlord's failure to comply with either the rental agreement or the statutory obligation to maintain the premises in a habitable condition under ORS 90.320. *See L & M Investment Co.*, 286 Or at 406-08 (so stating under *former* ORS 91.800 (1979), *renumbered as* ORS 90.360 (1989)); ORS 90.360(3) ("The remedy provided in [ORS 90.360(2)] is in addition to any right of the tenant arising under [ORS 90.360(1)(a)].").

First, ORS 90.360(1)(a) allows a tenant to terminate a lease after giving the landlord written "fix or I leave" notice and an opportunity to cure the defect. *See L & M Investment Co.*, 286 Or at 405 (so stating under *former* ORS 91.800(1) (1979)). Second, ORS 90.360(2) allows a tenant to "recover damages and obtain injunctive relief" for any noncompliance by the landlord with the rental agreement or habitability requirements. However, if the "landlord neither knew nor reasonably should have known of the condition that constituted the noncompliance," and the "tenant knew or reasonably should have known of the condition and failed to give actual notice to the landlord in a reasonable time prior" to the damage, the tenant is not "entitled to recover damages" for the landlord's noncompliance with the habitability requirements. ORS 90.360(2).

---

[2] ORS 90.100 was amended in 2019, after this action was commenced. However, those amendments do not affect the analysis of the issues on review. In this opinion, unless otherwise noted, we refer to the current version of the statute.

Thus, whereas paragraph (1)(a) of ORS 90.360 allows a tenant to terminate the rental agreement but expressly requires written notice as a prerequisite for that remedy, subsection (2) addresses different remedies and is framed in terms of whether a landlord knew or reasonably should have known of the problem leading to the dispute.

The ORLTA also provides two remedies, depending on the circumstances, for a landlord's failure to supply "essential services."[3] First, under ORS 90.365(1), if a landlord "intentionally or negligently fails to supply any essential service," then the tenant may give "written notice to the landlord specifying the breach and that the tenant may seek substitute services, diminution in rent damages or substitute housing." *See L & M Investment Co.*, 286 Or at 405 (that statute allows a tenant to either sue for damages based on a diminution in the fair rental value or take advantage of various "self-help" remedies, such as securing alternative housing or services, or repairing the problem and deducting the cost from the rent). Second, under ORS 90.365(2), if a landlord fails to supply an essential service, "the lack of which poses an imminent and serious threat to the tenant's health, safety or property," then the tenant may give the landlord a written "fix or I leave" notice, stating that the rental agreement will terminate in 48 hours unless the breach is remedied within that period.

More specific provisions of the ORLTA also set forth additional requirements for a tenant who is asserting a counterclaim in a landlord's action for possession or rent. *See* ORS 90.370. As relevant to this case, ORS 90.370(1)(a) requires a tenant to "prove that[,] prior to the filing of the landlord's action[,] the landlord reasonably had or should have had knowledge or had received actual notice of the

---

[3] As relevant here, "essential service" means

"(A) Heat, plumbing, hot and cold running water, gas, electricity, light fixtures, locks for exterior doors, latches for windows and any cooking appliance or refrigerator supplied or required to be supplied by the landlord; and

"(B) Any other service or habitability obligation imposed by the rental agreement or ORS 90.320, the lack or violation of which creates a serious threat to the tenant's health, safety or property or makes the dwelling unit unfit for occupancy."

ORS 90.100(13)(a)(A)-(B).

facts that constitute the tenant's counterclaim." *See* ORS 90.370(2) (making the requirements of paragraph (1)(a) applicable when a tenant asserts a counterclaim in a landlord's action for rent).

As this court has previously noted, a "net effect" of the foregoing statutes is the creation of an "implicit withholding remedy: if the landlord is in noncompliance with his obligations under the ORLTA to the monetary damage of the tenant, the tenant can withhold rent, and if the landlord commences an FED action, the tenant can counterclaim" for diminished rental value damages. *Napolski v. Champney*, 295 Or 408, 418, 667 P2d 1013 (1983). With that background in mind, we turn to the facts of this case.

## FACTS AND PROCEDURAL BACKGROUND

In November 2013, landlords and tenants entered into a rental agreement for a residential property. At trial, evidence was presented that, within a few days of moving in, tenants gave landlords a written list of items that they thought needed repair. One item on that list was "water backup in [the] bathroom drain downstairs." Shortly after receiving the list, landlords repaired the drain.

Several months into the tenancy, around March 2014, tenants notified landlords that the bathroom drain was clogged again. Landlords fixed the drain and gave tenants a plumbing tool to use if the problem recurred.

In May 2014, tenants tendered landlords a late rent payment that was less than the full $1,400 that was due. In an accompanying letter, tenants stated that the rent was very expensive and asked landlords to lower the rent "to a more reasonable cost since there is so much repair to be done" in terms of "leaks and flooding in the basement." Landlords replied that they would not consider lowering the rent until tenants paid amounts due for unpaid move-in charges, back rent, and unpaid utility bills. From May to December, tenants continued to tender late partial rental payments.

In mid-December 2014, tenants wrote landlords and left a phone message informing them that the bathroom drain had backed up again. In the letter, tenants said

that "this will make it about the 6th or 7th time this has happened since we have lived here." Landlords returned the phone call and sent a letter acknowledging tenants' letter and phone message. In the letter, landlords wrote that they had spoken to a member of tenants' family, who said that the plumbing tool supplied by landlords "immediately broke up some blockage in the line." In that letter, landlords also stated that they were "not aware that [tenants] report[ed] 6 or 7 blockages" during their tenancy.

Tenants defaulted on their rent payments, and landlords brought an eviction action against them. In that proceeding, tenants agreed to vacate the premises. After they did so, landlords brought this action for unpaid rent and other damages. Tenants asserted a counterclaim under ORS 90.360(2) for damages based on landlords' alleged failure to maintain the premises in a habitable condition. According to tenants, the residence was not habitable because, among other things, the sewer had backed up several times, causing damage to their personal property and diminishing the rental value of the premises.

At the conclusion of the trial, the trial court addressed tenants' counterclaim, stating:

> "I find the [tenants] did not comply with ORS 90.365(1) and did not properly notify the landlord[s] of problems, as required by that statute in writing. As a result, the tenants unlawfully withheld rent and are with unclean hands.
>
> "* * * * *
>
> "Furthermore, I find that this is a case about the tenants not wanting to pay the agreed-upon rent as opposed to any deficiency by the landlord[s] in [their] actions on this case."

Tenants objected, explaining that their counterclaim had been alleged under ORS 90.360(2), not ORS 90.365(1), and written notice therefore was not required. The trial court responded:

> "There was a requirement to withhold rent, that the tenant notify the landlord of specific deficiencies in the property, and that is required to be done in writing. That was not done. As a result, your client is here with unclean hands.

"The failure of paying rent changed the entirety of this case. Had your client decided to pay rent, [they] would be in a very different position vis-à-vis any claim that [they] bring[] before the Court. The choice to withhold rent triggers a requirement, and that requirement was not followed through with."

COURT OF APPEALS DECISION

Tenants appealed, assigning error to the trial court's dismissal of their habitability counterclaim and arguing that the trial court had misconstrued ORS 90.360(2) as requiring written notice as a prerequisite for asserting a claim. In response, landlords focused on the issue of unclean hands, arguing that sufficient evidence supported the trial court's finding in that regard.

Initially, the Court of Appeals framed the issue as whether a tenant "may always forgo" the "specific remedies" in the essential services statute, ORS 90.365, "which require giving a landlord written notice and an opportunity to cure, and proceed under the general damages provision of ORS 90.360(2) instead."[4] *Eddy*, 294 Or App at 177. However, that court deemed it unnecessary to resolve that question, reasoning that the trial court's findings had amounted to a determination that tenants had not brought their counterclaim in "good faith" as required by ORS 90.130, which "fully resolves tenant[s'] counterclaim[.]" *Id.* at 177-78.

The Court of Appeals explained that the trial court had used "'unclean hands' as a shorthand for its express finding that tenants were improperly motivated in bringing their damages counterclaim." *Id.* at 178 n 14. Quoting *Napolski*, 295 Or at 419, the court explained that the "statutory good faith obligation protects a landlord against

---

[4] In framing the issue that way, the Court of Appeals appears to have assumed that the habitability violation alleged by tenants—the clogged drain in the downstairs bathroom—"also amount[ed] to a failure to supply an 'essential service' that falls within [the] specific remedial provisions of ORS 90.365." *See Eddy*, 294 Or App at 177. However, tenants did not make any "essential service" allegation at trial, and landlords conceded before the Court of Appeals that tenants' counterclaim did not implicate an "essential service." The trial court also did not make any finding that tenants' counterclaim involved an "essential service," and it is not obvious that it does. We need not resolve that issue, because the Court of Appeals' disposition did not turn on whether tenants' counterclaim had involved an essential service.

spurious, frivolous, or improperly motivated counterclaims asserted to justify the withheld rent." *Eddy*, 294 Or App at 175 (internal quotation marks omitted; brackets omitted). The court reasoned that "the trial court was entitled to consider tenants' failure to avail themselves of a remedy that potentially could have remedied a condition that they now claim made the dwelling unfit for occupancy and valueless as a rental." *Id.* at 178.

The court then explained that, "[r]ather than alert landlord[s] to the alleged deficiency in writing and forewarn landlord[s] that they would withhold rent or engage in other self-help actions, as the 'essential services' statute requires, tenants instead told landlord[s] that they were struggling financially and repeatedly asked landlord[s] to lower the rent." *Id.* The trial court thus had "concluded from the evidence that tenants' counterclaim [had been] motivated by the desire to avoid their obligation to pay rent, not a desire to remedy a habitability issue with the premises." *Id.* And because "[t]hat finding on the trial court's part defeat[ed] tenants' counterclaim, regardless of whether tenants were entitled to pursue damages under ORS 90.360(2) or were limited to the 'essential services' remedies in ORS 90.365(1)[,]" "the trial court did not err in dismissing tenants' *** counterclaim." *Id.* Tenants petitioned for review, which we allowed.

## ANALYSIS

On review, tenants argue that the trial court and the Court of Appeals erred. *Amici curiae*, Legal Aid Services of Oregon and Oregon Law Center, join in that argument.[5] Together, tenants and *amici* address two principal issues.[6] First, they argue that ORS 90.360(2) makes clear that "actual notice," not written notice, is a prerequisite for pursuing a habitability action under that statute. Thus, the trial court's conclusion that written notice was required under ORS 90.360(2) was legal error.

---

[5] Landlords did not file a brief on review.

[6] Tenants make two other arguments—first, that the trial court's factual finding that tenants did not provide written notice was erroneous, and, second, that a lack of good faith under ORS 90.130 is an affirmative defense that must be raised in a responsive pleading. Neither argument was preserved below, and we do not reach those issues.

Second, tenants and *amici* argue that the Court of Appeals misconstrued ORS 90.130 when it affirmed the trial court on the ground that tenants had failed to act in "good faith." ORS 90.100(19) defines "good faith" for purposes of the ORLTA simply to mean "honesty in fact in the conduct of the transaction concerned." Tenants and *amici* argue that the Court of Appeals relied on a broader understanding of the term "good faith" than is found in the statute. *Amici* also observe that "the fundamental principle of the ORLTA's rent withholding remedy [is] that a tenant whose housing fails to meet the legal standard of habitability *has no obligation to pay full rent*." (Emphasis in original.) *Amici* point out that a tenant alleging habitability violations may be motivated by the desire for the landlord to abate the problem but also by the desire not to pay full rent. Thus, in the view of *amici*, because the legislature has expressly allowed rent withholding as a remedy for habitability violations, a tenant's financial motivations cannot provide a basis for finding a lack of "good faith" under ORS 90.130.

Because the Court of Appeals viewed the issue of good faith as dispositive, we begin there. As we will explain, we conclude that the Court of Appeals applied a broader concept of good faith than is embodied in the ORLTA; consequently, that court's rationale for affirming the trial court was incorrect.

The meaning of good faith under ORS 90.130 presents a question of statutory interpretation that we resolve by considering the text, context, and any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We begin with the statutory text. ORS 90.130 provides:

> "Every duty under this chapter and every act which must be performed as a condition precedent to the exercise of a right or remedy under this chapter imposes an obligation of good faith in its performance or enforcement."

In turn, the legislature defined "good faith" for purposes of the ORLTA as "honesty in fact in the conduct of the transaction concerned." ORS 90.100(19).

The legislature did not define "honesty in fact," but the legislative history provides important insight about

what the legislature understood that phrase to mean. The ORLTA, which includes ORS 90.130 and ORS 90.100(19), was enacted in 1973. Or Laws 1973, ch 559.[7] The ORLTA was modeled on the Uniform Residential Landlord and Tenant Act (1972) (URLTA). *Elk Creek Management Co. v. Gilbert*, 353 Or 565, 574, 303 P3d 929 (2013). As originally enacted, ORS 90.130 and ORS 90.100(19) mirrored URLTA sections 1.302[8] and 1.301(4)[9] respectively. *Compare former* ORS 91.730 (1973), *renumbered as* ORS 90.130 (1989), *and former* ORS 91.705 (1973), *renumbered as* 90.100 (1989), *with* URLTA § 1.302 (1972), *reprinted in* 7A Uniform Laws Annotated 516 (1978), *and* URLTA § 1.301(4) (1972), *reprinted in* 7A Uniform Laws Annotated 513 (1978).

Section 1.302 of the URLTA included a comment explaining that the section was adapted, in turn, from section 1-203 of the Uniform Commercial Code (UCC). URLTA § 1.302 Commissioners' Commentary (1972) (so stating), *reprinted in* 7A Uniform Laws Annotated 516 (1978). At that time, UCC section 1-203 provided: "Every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement." UCC § 1-203 (1966), *reprinted in* 1 Uniform Laws Annotated 50 (1968). The UCC, like the URLTA, further defined good faith as "honesty in fact in the conduct or transaction concerned."[10] *Compare* UCC § 1-201(19) (1966), *reprinted in* 1

---

[7] As stated above, the ORLTA was renumbered in 1989. *See* ORS ch 91 (1989) (setting out renumbering); *see also former* ORS 91.730 (1973), *renumbered as* ORS 90.130 (1989); *former* ORS 91.705 (1973), *renumbered as* ORS 90.100 (1989). Since that renumbering, the legislature has moved the definition of "good faith," which is now found in ORS 90.100(19). However, the text of the definition has not changed.

[8] URLTA section 1.302 provided:

"Every duty under this Act and every act which must be performed as a condition precedent to the exercise of a right or remedy under this Act imposes an obligation of good faith in its performance or enforcement."

[9] URLTA section 1.301(4) provided that "'good faith' means honesty in fact in the conduct of the transaction concerned[.]"

[10] Other provisions of the UCC added to the definition of good faith for purposes of those specific provisions. *See, e.g.*, UCC § 2-103 (1968), *reprinted in* 1 Uniform Laws Annotated 73 (1968) (providing that, "good faith in the case of a merchant means honesty in fact *and the observance of reasonable commercial standards of fair dealing in the trade*" (emphasis added)).

Uniform Laws Annotated 32 (1968), *with* URLTA § 1.301(4) (1972), *reprinted in* 7A Uniform Laws Annotated 513 (1978).

As noted, when the legislature enacted ORS 90.130 and ORS 90.100(19), it adopted the URLTA verbatim. In light of the text and history, we conclude that, when the legislature used the phrase "good faith" in ORS 90.130 and defined it as "honesty in fact" in ORS 90.100(19), it intended to follow the URLTA in incorporating the meaning of "good faith" in UCC section 1-201(19).

This court has previously interpreted that UCC provision, originally codified in Oregon at ORS 71.2010(19) (1963).[11] *See U.S. National Bank v. Boge*, 311 Or 550, 814 P2d 1082 (1991); *Community Bank v. Ell*, 278 Or 417, 564 P2d 685, *reh'g den*, 279 Or 245, 566 P2d 903 (1977). In *Community Bank*, we explained that the appropriate standard for "good faith" under ORS 71.2010(19) (1977) is a "subjective one, looking to the intent or state of mind of the party concerned." 278 Or at 427-28. Similarly, in *U.S. National Bank*, we explained that the UCC's definition of "good faith" sets out a subjective standard that is distinguishable from the common law's *objective* standard of good faith, which considers the reasonable expectations of the parties. *See* 311 Or at 564-65 ("In contrast [to the UCC's definition of good faith], the common law standard of good faith is an 'objective' one that considers the reasonable expectations of the parties."). We then explained that the obligation of good faith under ORS 71.2010(19) (1991) does "not vary the substantive terms of the bargain or of the statute, nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract or statute." *Id.* at 567.

---

[11] ORS 71.2010 (1963) adopted UCC 1-201. Or Laws 1961, ch 726, § 71.2010 (enacting ORS 71.2010). Accordingly, ORS 71.2010(19) (1963) provided, "'Good faith' means honesty in fact in the conduct or transaction concerned." As a result of later amendments to the Oregon statutes codifying the UCC, *see* Or Laws 2009, ch 181, § 8, the relevant provision now defines "good faith" as "honesty in fact *and the observance of reasonable commercial standards of fair dealing*." ORS 71.2010(2)(t) (emphasis added). Our decisions in *U.S. National Bank v. Boge*, 311 Or 550, 814 P2d 1082 (1991) and *Community Bank v. Ell*, 278 Or 417, 564 P2d 685 (1977), discussed herein, construed the original, narrower definition, which is the definition that continues to exist in the ORLTA.

The decisions in *U.S. National Bank*, 311 Or 550, and *Community Bank*, 278 Or 417, instruct that, in applying ORS 90.130, "good faith" turns on a party's subjective intentions. And the obligation of good faith cannot vary the substantive terms of the ORLTA. Thus, a person who acts in a manner "expressly permitted" by the ORLTA does not breach the duty of good faith unless the person has acted dishonestly as to the matter. Whether (or not) his or her actions meet an objective standard of "reasonableness"—or are "unpleasantly motivated," *see U.S. National Bank*, 311 Or at 567—is irrelevant.

We turn to the Court of Appeals' decision. As explained, that court held that the trial court's findings about tenants' conduct properly supported a conclusion that they had failed to act in good faith. *Eddy*, 294 Or App at 178. Specifically, the Court of Appeals understood the trial court to have found that tenants' "counterclaim [had been] motivated by the desire to avoid their obligation to pay rent, not a desire to remedy a habitability issue with the premises." *Id*. And, as support for that conclusion, the Court of Appeals cited the trial court's findings that tenants had not provided landlords with written notice and had stated their desire for lower rent. *Id*.

Given the meaning of "good faith" under the ORLTA, the Court of Appeals was incorrect to frame the inquiry as dependent on tenants' "motivation," rather than whether they had acted with "honesty in fact," ORS 90.100(19). In doing so, the Court of Appeals appears to have imported the broader concept of good faith that is frequently found in both statute and common law. *See, e.g.*, *U.S. National Bank*, 311 Or at 564-65 ("[T]he common law standard of good faith is an 'objective' one that considers the reasonable expectations of the parties."); ORS 181A.670(3) (stating that presumption of good faith can be rebutted upon showing that the entity "disclosed the information *** *with malicious purpose*" (emphasis added)); ORS 71.2010(2)(t) (stating that good faith means "honesty in fact *and the observance of reasonable commercial standards of fair dealing*" (emphasis added)).

The Court of Appeals relied in part on our statement in *Napolski* that the obligation of "good faith" under

*former* ORS 91.730 (1981) prohibits "[s]purious, frivolous, or improperly motivated counterclaims." *See Eddy*, 294 Or App at 175, 178 (quoting *Napolski*, 295 Or at 419 (brackets in *Eddy*)). We acknowledge that that statement, on its face, can be read to embrace a broad concept of good faith like that which the Court of Appeals adopted below. But, we never elaborated in *Napolski* on what types of "motivations" might be "improper." *See* 295 Or at 419. More fundamentally, the statement in *Napolski* was *dicta*—it was not necessary to our holding that "a tenant is not in default of rent and a landlord is not entitled to terminate the lease for nonpayment of rent if the tenant has refused to pay the rent because of some default of the landlord's which entitles her to damages and she tenders sufficient funds into court to cover any rent that ultimately may be determined to be due." 295 Or at 418. Rather, that statement was part of our explanation of why withholding is not as "formidable weapon in the tenant's arsenal" as it appears to be at first blush. *Id.* 418-19. To the extent that the reference in *Napolski* to "improperly motivated" counterclaims could be read to mean that a tenant's subjective motivations alone may bar a counterclaim that a tenant nonetheless believes to be meritorious, that suggestion was unnecessary to the holding and was incorrect.

The ORLTA, as we have explained, expressly incorporates a specific and narrow meaning of the term "good faith." Here, tenants violated the ORLTA's obligation of good faith only if they acted dishonestly with respect to the allegation in their counterclaim—meaning that they alleged a counterclaim that they knew to lack merit. So long as they subjectively believed that the counterclaim had merit, and so long as they did not knowingly fail to comply with any prerequisite for asserting their claim, they were entitled to bring it. Nothing else is required to meet the statutory requirement of "honesty in fact."

Of course, the fact that the Court of Appeals adopted too broad a construction of "good faith" under ORS 90.130 does not mean that the trial court erred. We turn, then, to that court's findings and rulings.

The trial court found that tenants had acted with "unclean hands." We agree with the Court of Appeals that,

in context, the trial court's statement is properly under-
stood as a shorthand reference to the statutory obligation of
good faith under ORS 90.130. In support of that finding, the
trial court cited tenants' failure to provide written notice
of the habitability issue and their desire to pay lower rent.
For two reasons, however, the trial court's reasoning was
problematic.

First, although the trial court stated that "this is
a case about the tenants not wanting to pay the agreed-
upon rent as opposed to any deficiency by the landlord[s] in
[their] actions on this case[,]" that statement falls short of a
finding that tenants did not *subjectively believe* that a hab-
itability violation existed. Neither did the trial court make
any *finding* that no habitability problem existed. Rather, the
trial court's statement is consistent with a view that, *even if*
tenants genuinely had believed that a habitability violation
existed—indeed, even if one did exist—their counterclaim
was barred if their primary motivation was simply to pay
less rent. In other words, the trial court's articulation of
its finding that tenants lacked good faith suggests that the
trial court acted with the same erroneous understanding
of "good faith" under ORS 90.130 that the Court of Appeals
adopted.

Second, it is clear from the record that the trial
court based its good faith finding in significant part on its
understanding that tenants were required, and failed, to
provide landlords with *written* notice before availing them-
selves of a rent-withholding remedy. For reasons explained
next, that was incorrect.

As noted above, written notice is a prerequisite for
"essential service" claims under ORS 90.365(1). Tenants,
however, asserted their counterclaim as a habitability claim
under ORS 90.360(2). That counterclaim was asserted in
response to landlords' action for rent while tenants were not
in possession of the property. Thus, tenants' counterclaim
was subject to the requirements of ORS 90.360(2) and ORS
90.370(2) (addressing notice requirements when a tenant
asserts a counterclaim in a landlord's action for rent and
tenant is no longer in possession).

Beginning with ORS 90.360(2), although this court has not construed the current version of that statute, we have construed previous versions. ORS 90.360(2) was originally codified at ORS 91.800(2). As enacted, *former* ORS 91.800(2) (1973) provided:

"Except as provided in ORS 91.700 to 91.895, the tenant may recover damages and obtain injunctive relief for any noncompliance by the landlord with the rental agreement or ORS 91.770."

In *L & M Investment Co.*, we construed that statutory text and held that written "fix or I leave" notice was *not* a prerequisite for a tenant to bring an action under *former* ORS 91.800(2) (1979) for a habitability violation in a forcible entry and detainer action. 286 Or at 408-09.

In 1989, *former* ORS 91.800 (1973) was renumbered to ORS 90.360, without substantive change. *See* ORS ch 91 (1989) (setting out renumbering). In *Davis*, 327 Or at 592, we construed ORS 90.360(2) (1991), which had the same wording as the version of *former* ORS 91.800(2) (1979) at issue in *L & M Investment Co.*, 286 Or 397. We concluded that a tenant was not required to prove that the landlord had "actual or constructive knowledge" of a habitability violation to prevail on a statutory claim for damages under ORS 90.360(2) (1991). *Davis*, 327 Or at 592.

However, in 1997, the legislature amended ORS 90.360(2) to provide:

"Except as provided in this chapter, the tenant may recover damages and obtain injunctive relief for any noncompliance by the landlord with the rental agreement or ORS 90.320. The tenant shall not be entitled to recover damages for a landlord noncompliance with ORS 90.320 if the landlord neither knew nor reasonably should have known of the condition that constituted the noncompliance and:

"(a) The tenant knew or reasonably should have known of the condition and *failed to give actual notice* to the landlord in a reasonable time prior to the occurrence of the personal injury, damage to personal property, diminution in rental value or other tenant loss resulting from the noncompliance; or

"(b)   The condition was caused after the tenancy began by the deliberate or negligent act or omission of someone other than the landlord or a person acting on behalf of the landlord."

(Emphasis added.) Importantly, the 1997 amendments added a notice requirement for tenants who were bringing an action to remedy a landlord's noncompliance with the habitability requirements. That notice requirement was an "actual notice" requirement. And "actual notice" is still what is required under ORS 90.360(2) today.

Actual notice is defined by ORS 90.150, which provides:

"When [the ORLTA] requires actual notice, service or delivery of that notice shall be executed by one or more of the following methods:

"(1)   Verbal notice that is given personally to the landlord or tenant or left on the landlord's or tenant's telephone answering device.

"(2)   Written notice that is personally delivered to the landlord or tenant, left at the landlord's rental office, sent by facsimile to the landlord's residence or rental office or to the tenant's dwelling unit, or attached in a secure manner to the main entrance of the landlord's residence or tenant's dwelling unit.

"(3)   Written notice that is delivered by first class mail to the landlord or tenant. If the notice is mailed, the notice shall be considered served three days after the date the notice was mailed.

"(4)   Any other method reasonably calculated to achieve actual receipt of notice, as agreed to and described in a written rental agreement."

Thus, ORS 90.150 makes clear that "actual notice," as required by ORS 90.360(2), does not require written notice. Rather, actual notice can be given verbally or by any "other method reasonably calculated to achieve actual receipt of notice, as agreed to and described in a written rental agreement." ORS 90.150(1), (4). Thus, ORS 90.360(2) does not require written notice.

Neither does ORS 90.370(2). That statute provides:

"In an action for rent when the tenant is not in posses-
sion, the tenant may counterclaim as provided in subsec-
tion (1) of this section but is not required to pay any rent
into court."

Paragraph (1)(a), in turn, provides:

"*** [T]he tenant may counterclaim for any amount ***
that the tenant may recover under the rental agreement
or this chapter, provided that the tenant must prove that
prior to the filing of the landlord's action the landlord rea-
sonably had or should have had knowledge or had received
*actual notice* of the facts that constitute the tenant's
counterclaim."

(Emphasis added.) Thus, ORS 90.370(1)(a), like ORS
90.360(2), refers to whether the landlord had "actual notice"
or reasonably "should have" known.

In sum, neither ORS 90.360(2) nor ORS 90.370
requires written notice as a prerequisite for a tenant's coun-
terclaim under ORS 90.360(2). The trial court's contrary
view was erroneous. Moreover, the record from the hearing
demonstrates that the trial court relied heavily on its erro-
neous understanding that written notice was required when
it determined that tenants had not acted in good faith for
purposes of ORS 90.130. Because we cannot conclude that
the trial court would have reached the same conclusion as
to good faith even if it had correctly applied ORS 90.360(2),
we remand to the trial court for further proceedings. *See
J. M. v. Oregon Youth Authority*, 364 Or 232, 234, 252-53,
434 P3d 402 (2019) (remanding the case to the trial court to
reconsider its decision under the correct legal standard).

The decision of the Court of Appeals is reversed.
The judgment of the circuit court is reversed, and the case
is remanded to the circuit court for further proceedings.