550 August 28, 2024 No. 593

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Greg JARED,
*Plaintiff-Respondent,*
*v.*
Katie HARMON
and all occupants,
*Defendant-Appellant.*

Umatilla County Circuit Court
22LT13674; A180239

Jon S. Lieuallen, Judge.

Argued November 30, 2023.

Elizabeth M. Lewis argued the cause for appellant. Also on the brief were Samara Diab, Emily Rena-Dozier, and Legal Aid Services of Oregon.

Nick R. Blanc and The Blanc Firm, LLC filed the brief for respondent.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

Shorr, P. J., dissenting.

**MOONEY, J.**

In this forcible entry and detainer (FED) proceeding, tenant appeals a judgment awarding possession to landlord of the rented space on which tenant placed her recreational vehicle (RV) and denying her counterclaims for injunctive relief and damages. She seeks reversal of the judgment awarding landlord possession as well as the supplemental judgment awarding him costs and attorney fees. Tenant raises three assignments of error, asserting first that the trial court erred in "denying tenant's motion for involuntary dismissal," and second, that the trial court erred by "dismissing tenant's habitability counterclaims" based on landlord's failure to provide sewage disposal to the space she rented from him for her RV. Tenant's third assignment asserts as an alternative to her second assignment that if the trial court did not legally err, then it based its conclusion on the erroneous factual finding that landlord provided tenant with sewage disposal.

Landlord responds that this appeal should be dismissed as moot because tenant is no longer in possession of the leased premises and has no reasonable expectation of returning to the leased premises. If the matter is not moot, landlord argues that he was entitled to possession of the leased space because (1) tenant violated her legal obligation under ORS 90.325 to keep the space clean and sanitary, and (2) the habitability requirements of ORS 90.320 do not apply to this tenancy because he is not operating a facility as defined by ORS 90.100(16).

We reject landlord's assertion that this appeal is moot. Tenant's liability for the court-awarded costs and attorney fees depends on "our determination on the merits of the question on appeal." *Schultz v. Scott*, 333 Or App 76, 78 n 1, 551 P3d 949 (2024); *Ramsum v. Woldridge*, 222 Or App 109, 114-15, 192 P3d 851 (2008) ("Because the judgments for costs and disbursements are still in controversy and depend on a determination on the merits, we conclude that these [FED] cases are not moot."). We, thus, turn to the merits.

We review rulings in residential FED actions for errors of law. *Hanson Joint Revocable Living Trust v. Sliger*, 328 Or App 15, 16, 536 P3d 1051 (2023). We are bound by the

trial court's findings of fact if there is any evidence to support them. *Lopez v. Kilbourne*, 307 Or App 301, 307, 477 P3d 14 (2020). We draw the facts from the record in accordance with that standard.

Landlord rented a space on his farm to tenant on which to place her RV. Tenant and her partner lived in the RV on the rented space. There is a written rental agreement for a fixed term tenancy ending on November 1, 2022, that is confusing for several reasons,[1] but the parties generally agree that it is the agreement between them for the space on landlord's farm.

The rented space is on property zoned exclusively for farm use. It is the only space for rent on the property and is situated next to "a wellhouse for cattle." Tenants have access to water and electricity through the wellhouse. There is no septic system on the property. Tenant hooked her RV septic system into a black pipe which resulted in raw sewage being released onto the ground into bushes not far from the RV. The parties offered conflicting testimony about whether the black pipe was present at the space when tenant began parking her RV there or whether tenant added the pipe after she arrived. They offered conflicting testimony about whether landlord directed tenant to use the black pipe to dispose of her sewage.

At some point, an anonymous complaint was made to the Umatilla County Public Health Department about a strong odor in the area. The complaint was investigated, and tenant's RV was found to be the source of the odor. Tenant cooperated with the investigator, and on September 15, 2022, she told the investigator "that the pipe dumps into the bushes." The investigator was unable to find the end of the pipe that day due to the presence of water in and around the brambles and bushes. On September 20, 2022, when the investigator

---

[1] For example, the address of the premises in the written agreement does not correspond to the rural property actually rented. The written rental agreement includes a chart with typed Xs indicating that water, sewer, and garbage can service were "[p]aid by the landlord and included in rent," and that electric, basic cable, and internet access were "[p]aid by the tenant." Additionally, there are two hand-written Xs indicating that water and sewer were "[p]aid by the tenant." Tenant testified that landlord presented her with the written rental agreement, already filled out, and that she did not make the handwritten Xs concerning water and sewer. Landlord testified that he did not recall who made those handwritten Xs.

returned to the property, she was able to locate the end of the black pipe and visualize sewage flowing out of it and into the brambles, and she confirmed that the RV was the source of the sewage being discharged out of the pipe. The investigator was particularly concerned that the sewage was being discharged in close proximity to the well supplying the wellhouse.

On September 22, 2022, landlord was cited for violating OAR 340-071-0100 which prohibits discharging untreated sewage or septic tank effluence onto the ground surface or into waters. The citation required him to (1) cap the wastewater discharge port on the RV, (2) cease all discharge of untreated sewage directly onto the ground, (3) clean up the wastewater by applying lime to the area already covered with sewage, and (4) report the steps taken by October 15, 2022. The next day, landlord served tenant with a "termination notice" requiring her to "cure" the septic violation by October 8, 2022, and notifying her that if the problem was not cured by then that the tenancy would be "deemed terminated" and she would be required to vacate the premises. The investigator testified that as of October 19, 2022, when she returned to the property, the black pipe was still connected to the RV and the violation had not yet been corrected.

## TENANT'S MOTION FOR INVOLUNTARY DISMISSAL

At the close of landlord's case, tenant moved the court for an "involuntary dismissal on the basis that [landlord] has failed to establish a *prima facie* case that [tenant] violated her duties under [ORS] 90.325[.]"[2] She argued that landlord was legally obligated to provide sewage disposal to the rented space as an essential service under ORS 90.100(15)(b)(A) and as a habitability requirement under ORS 90.320(1)(c)(C). Because landlord did not provide sewage disposal, "the problem" was beyond tenant's control and "keeping the premises

---

[2] ORCP 54 B(2) governs motions for involuntary dismissal and provides:

"After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a judgment of dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment of dismissal against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment of dismissal with prejudice against the plaintiff, the court shall make findings as provided in Rule 62."

clean and sanitary [was] beyond what the condition of the premises permit[ted]." Landlord resisted tenant's motion arguing that because he was not operating a "facility" as that term is defined by ORS 90.100(16), he was not required to provide sewage disposal for the rented space. The trial court denied the motion, indicating that it was still considering the evidence, and the trial proceeded.

To recover possession of the rented property from tenant, landlord was required to plead and establish by a preponderance of the evidence (1) that he owned the property, (2) that he had given tenant written notice that she had failed to keep areas of the rented property under her control clean and sanitary which affected health and safety, and that the rental agreement would terminate if the problem was not corrected by a date certain, (3) that tenant failed to correct the problem, and (4) that tenant was still in possession of the property when the eviction complaint was filed. ORS 90.325 (1)(b); ORS 90.392(1)(b), (3)(c); ORS 105.110; ORS 105.123.

There was evidence presented by landlord that, if believed by the court as factfinder, he owned the property, the tenant discharged raw sewage from her RV onto the ground through the black pipe, that she was given notice that she needed to fix the problem by capping the RV sewage port and essentially disconnecting her RV from the black pipe or that the tenancy would terminate, that she did not disconnect her RV from the black pipe resulting in the unlawful discharge of sewage beyond the time allotted to remedy the problem, and that she remained in possession of the rented space when landlord filed this case. The fact that there was conflicting testimony about whether landlord initially instructed tenant to use the black pipe for sewage disposal did not require the court to grant tenant's motion. At bottom, the evidence supported that once tenant was notified of the problem, she had the ability to stop the problem by capping her RV port and disconnecting her RV septic system from the pipe, but that she did not do so. The evidence supported that conclusion regardless of whether landlord had a legal duty to provide sewage disposal because once notified of the problem, tenant could have corrected it, and she chose not to do so. The trial court did not err in denying

the motion for involuntary dismissal and allowing the trial to proceed.

### TENANT'S HABITABILITY COUNTERCLAIMS[3]

Tenant had two potential types of remedies available to her under ORS 90.360.[4] Under ORS 90.360(1)(a), she

_____

[3] We begin by addressing what seems to us to be a technical deficiency in the operative pleadings. Tenant's amended answer dated November 2, 2022, and entered in the Umatilla County Circuit Court records on November 7, 2022, denied that landlord was entitled to possession of the space, specifically alleging, as relevant, that "[l]andlord has not been in compliance regarding proper sewage disposal system connection." She asked that the court not award possession to landlord and that it award costs and fees in her favor. The amended answer asserted no counterclaims.

On November 30, 2022, tenant filed a motion for leave to file a second amended answer that, for the first time, raised counterclaims. On December 8, 2022, trial commenced, and tenant's counsel began her opening statement with this colloquy that included the trial court and opposing counsel:

"[COUNSEL FOR TENANT]: As a preliminary matter, Your Honor, and I'm sorry for not, um, thinking of this earlier, what is the status of our motion to amend our answer?

"THE COURT: Um, generally, uh, amendments are, so to speak, freely given. I think that's kind of the rule, so—

"[COUNSEL FOR TENANT]: Okay.

"THE COURT: And any—

"[COUNSEL FOR LANDLORD]: Liberally given.

"THE COURT: —objection? Liberally—

"[COUNSEL FOR LANDLORD]: Yeah.

"THE COURT: It's liberally given?

"[COUNSEL FOR LANDLORD]: And I don't even think I have the right to object under the statute, so yeah.

"THE COURT: So, I mean, unless there's just something—I mean, I think that's, that's kind of my general recollection about reciting—or caselaw, so—

"Uh, you're talking about the, uh, amended answer on 11-7? At least that's when it was, uh, recorded with the court. It looks like it was signed on 11-2.

"[COUNSEL FOR TENANT]: Yes, Your Honor.

"THE COURT: Okay. Hearing no objection, it's accepted[.]"

But the amended answer that was entered on November 7 is not the second amended answer that was the subject of the motion to amend that was pending when trial began. So far as we can tell, the second amended answer was never actually filed or entered into the court records except as an exhibit to the motion to amend filed on November 30. The parties nevertheless tried the case as if the counterclaims raised by the second amended complaint were at issue and the trial court ruled on those counterclaims. We likewise proceed to address tenant's assignment of error directed to the trial court's ruling on "the counterclaims."

[4] ORS 90.360 provides, as relevant:

"(1)(a) Except as provided in this chapter, if there is a material noncompliance by the landlord with the rental agreement or a noncompliance with

could "terminate [the] lease after giving the landlord written 'fix or I leave' notice and an opportunity to cure the defect." *Eddy v. Anderson*, 366 Or 176, 179, 458 P3d 678 (2020). She could also seek damages and obtain injunctive relief under ORS 90.360(2) for any noncompliance by landlord with the rental agreement or habitability requirements. "However, if the landlord neither knew nor reasonably should have known of the condition that constituted the noncompliance, and the tenant knew or reasonably should have known of the condition and failed to give actual notice to the landlord in a reasonable time prior to the damage, * * * tenant is not entitled to recover damages for the landlord's noncompliance with the habitability requirements." *Eddy*, 366 Or at 179 (explaining tenant's remedies under ORS 90.360(2) (internal quotation marks omitted)).

The Supreme Court explained that "whereas paragraph (1)(a) of ORS 90.360 allows a tenant to terminate the rental agreement but expressly requires written notice as a prerequisite for that remedy, subsection (2) addresses different remedies and is framed in terms of whether a landlord knew or reasonably should have known of the problem leading to the dispute." *Eddy*, 366 Or at 180. Tenant's counterclaims here fall under subsection (2), with the first

ORS 90.320 or 90.730, the tenant may deliver a written notice to the landlord specifying the acts and omissions constituting the breach and that the rental agreement will terminate upon a date not less than 30 days after delivery of the notice if the breach is not remedied in seven days in the case of an essential service or 30 days in all other cases, and the rental agreement shall terminate as provided in the notice subject to paragraphs (b) and (c) of this subsection. * * *

"(b) If the breach is remediable by repairs, the payment of damages or otherwise and if the landlord adequately remedies the breach before the date specified in the notice, the rental agreement shall not terminate by reason of the breach.

"* * * * *

"(2) Except as provided in this chapter, the tenant may recover damages and obtain injunctive relief for any noncompliance by the landlord with the rental agreement or ORS 90.320 or 90.730. The tenant shall not be entitled to recover damages for a landlord noncompliance with ORS 90.320 or 90.730 if the landlord neither knew nor reasonably should have known of the condition that constituted the noncompliance and:

"(a) The tenant knew or reasonably should have known of the condition and failed to give actual notice to the landlord in a reasonable time prior to the occurrence of the personal injury, damage to personal property, diminution in rental value or other tenant loss resulting from the noncompliance[.]"

counterclaim alleging that landlord failed to provide a sewage disposal system and the second counterclaim alleging that due to the lack of a sewage disposal system, landlord also failed to provide a safe water supply. Tenant sought damages resulting from the reduced rental value of the space as well as injunctive relief requiring landlord to provide the required sewage disposal and water supply to the space.

Landlord argues that he had no duty to maintain the space in habitable condition and that, therefore, the court properly denied tenant's counterclaims. We conclude that landlord had a duty to provide water and sewage disposal to this rental space under ORS 90.320, but that the trial court nevertheless did not err in denying tenant's counterclaims.

A landlord has a duty "at all times during the tenancy [to] maintain the dwelling unit in a habitable condition." ORS 90.320(1). ORS 90.100(14) provides that a "dwelling unit" is a structure used "as a home" and, in the case of a person "who rents a space for a *** recreational vehicle ***, but does not rent the home, means the space rented and not the *** recreational vehicle *** itself." ORS 90.320(1) provides that a landlord must maintain a water supply and sewage disposal system for the dwelling unit:

"[A] dwelling unit shall be considered unhabitable if it substantially lacks:

"* * * * *

"(c)   A water supply approved under applicable law that is:

"* * * * *

"(C)   Connected to a sewage disposal system approved under applicable law[.]"

The third subsection of ORS 90.320 limits the duties set forth in the first subsection of that statutory provision as follows:

"(3)   Any provisions of this section that reasonably apply only to a structure that is used as a home, *** do not apply to a *** recreational vehicle *** where the tenant

owns the \*\*\* recreational vehicle[,] \*\*\* rents the space and, in the case of a dwelling or home, the space is not in a facility."

Whether the limitation of ORS 90.320(3) applies here depends on whether the evidence supports a determination that landlord (1) provided only the space on which tenant parked her RV, (2) in a setting that is not a facility, and that (3) the habitability requirement of a water supply connected to an approved sewage disposal system is one that could "reasonably apply only" to the structure that is used as a home. We address each of those evidentiary components in order.

First, the parties agree that landlord leased only the space to tenant, and tenant parked her RV on that space.

Second, the rented space is not in a "facility." A "facility" is a "manufactured dwelling park." ORS 90.100(16). A "manufactured dwelling park" is "a place where four or more manufactured dwellings are located, the primary purpose of which is to rent space or keep space for rent to any person for a charge or fee." ORS 90.100(29). A "manufactured dwelling" is "a residential trailer, a mobile home or a manufactured home." ORS 90.100(28); *see also* ORS 446.003 (21)(a). An RV is not a manufactured dwelling. It is "a vehicle with or without motive power that is designed for use as temporary living quarters[.]" ORS 174.101(3); *see also* ORS 90.100(39) (providing that RV is defined by ORS 171.101). The evidence thus supports the conclusion that the space that tenant rented from landlord was not in a facility.

As we have already explained, the rented space is the dwelling unit. But the space is not itself a structure, and therefore, it is not a structure that is used as a home. The RV is the structure that tenant uses as a home. She parks her RV on the space that she rents from landlord. The third question is whether providing a water supply connected to an approved sewage disposal system reasonably applies only to the structure being used as a home or whether it might also reasonably apply to the rented space on which the structure being used as a home is placed. We conclude that providing water and sewage disposal to a piece of property that is itself a "dwelling unit" under the Oregon Residential

Landlord and Tenant Act and that is the place on which a home is located is the type of habitability requirement that would reasonably apply to the space. Perhaps more so than the structure itself. And because of that, the limitation of ORS 90.320(3) does not apply to landlord's duty to provide sewage disposal to this dwelling unit.

The trial court did not expressly rule or otherwise state its view of whether landlord had a duty to provide water or sewage disposal in the context of this tenancy, but the overall impression given the court's comments reflected in the trial transcript is that it agreed that landlord had such a duty under ORS 90.320 and that its focus was on whether tenant had established a right to a remedy under ORS 90.360. The trial court's focus was on what it regarded as the key question on the counterclaims, a factual question of credibility that it characterized this way—"We have a he said, she said, in essence here." The court described the case as "very messy," acknowledged some of the conflicting testimony, and finally concluded that tenant failed to meet her burden of proof on the counterclaims.

There was certainly evidence to support that landlord was not aware that tenant's sewage was being dumped from her RV onto the ground until he received the notice of the septic violation. And even if tenant was also initially unaware that the sewage was being released onto the ground, there was evidence that she was aware of the problem even before the landlord sent her the lease termination notice. She nevertheless continued to dispose of her sewage in the same way. Tenant's argument that landlord's failure to provide sewage disposal prevented her from being able to keep the premises clean is not factually accurate. A violation by landlord of his duty to provide sewage disposal does not excuse tenant of her duty under ORS 90.325 to keep the rented space clean to the extent that she could. The RV was, by design, set up with its own septic system, and tenant had the capacity to cap the septic port, disconnect it from the black pipe, and dump its sewage at a mobile site where such sewage is accepted. Landlord testified that he did not install the black pipe to which tenant connected the RV's sewage system and that a previous tenant had "carr[ied the sewage]

off" site, and tenant herself testified that she had a portable black tank which she could use to dispose of the sewage. Based on that evidence, the trial court could reasonably have inferred that, pursuant to ORS 90.325, tenant's sewage was under her own control and therefore, she was subject to an ongoing statutory duty to prevent the accumulation of "debris" and "filth." We infer from the record that the trial court found landlord's testimony more credible than that of tenant and we are not in a position to second-guess that. We cannot say that the trial court erred.

Affirmed.

**SHORR, P. J.,** dissenting.

I concur with the majority's decision that, under these circumstances, the landlord had a duty under the Oregon Residential Landlord and Tenant Act (ORLTA) to provide sewage disposal to tenant when she rented space on landlord's property for the use of a recreational vehicle (RV) as a home. I respectfully disagree, however, with the majority's conclusion that, despite landlord's breach of his duty to provide sewage disposal services, tenant was ultimately responsible for keeping the property free from the accumulation of sewage. I, therefore, dissent.

As the majority accurately recites, landlord initiated a forcible entry and detainer (FED) action, alleging that tenant violated her duties under ORS 90.325(1)(b). That statute requires that the tenant

> "[k]eep all areas of the premises *under control of the tenant* in every part as clean, sanitary and free from all accumulations of debris, filth * * * as the condition of the premises permits *and to the extent that the tenant is responsible for causing the problem.* The tenant shall cooperate to a reasonable extent in assisting the landlord in any reasonable effort to remedy the problem."

ORS 90.325(1)(b) (emphases added). The majority concludes that landlord had a duty under the ORLTA's habitability requirements, ORS 90.320(1), to provide sewage disposal services to tenant. 334 Or App at 558. As noted, I agree. The majority then determines that, as a factual matter, the trial court credited landlord's testimony that he did not install

the black pipe through which tenant dumped sewage from her RV, and that tenant had the ability to store some sewage in her RV. 334Or App at 560-61. As a result, the majority concludes that tenant controlled the sewage and caused the problem by disposing of it from the RV and through the black pipe. *Id.* I disagree.

In my view, landlord had a duty to provide sewage services so, therefore, landlord, and not tenant, had control of "the areas of the premises" to the extent that they related to sewage disposal and, as a legal matter, was "responsible for causing the problem." ORS 90.325(1)(b). Even to the extent that there was a factual dispute about whether landlord was initially aware of the black pipe connected to the RV, there is no dispute that landlord received notice from the county public health department that the black pipe was illegally discharging sewage. If landlord had the duty to provide sewage services, as we all agree, it was incumbent on landlord to address the ongoing sewage issue.[1] Therefore, I would conclude that landlord did not prove his FED action because he did not prove that tenant failed to keep areas under *her* control free of filth nor that tenant was responsible for causing the problem. ORS 90.325(1)(b). The trial court, therefore, should have granted tenant's motion for judgment of dismissal under ORCP 54 B(2).

I would also reverse and remand for further proceedings on tenant's counterclaim under ORS 90.360(2) for landlord's noncompliance with the habitability requirements. It cannot be said that landlord "neither knew nor reasonably should have known of the condition that constituted the noncompliance" such that tenant may not recover damages. ORS 90.360(2). Here, the condition that caused the noncompliance with the habitability requirements in ORS 90.320(1) was landlord's failure to provide for sewage disposal. Landlord knew or reasonably should have known

---

[1] This is not to suggest it was appropriate for the tenant to continue to dump sewage through the black pipe once it was clear that the end of the pipe dumped directly onto the ground and near water. It is to say that landlord, not tenant, had the duty to provide sewage services, controlled the premises to that extent, and was "responsible for causing the problem" by not providing sewage services in the first instance. Sewage ultimately has to be disposed of somewhere away from the home, even if it may be temporarily stored in an RV. It was landlord, however, that had to remedy that problem.

that that service was not provided; indeed, landlord testified that the property never had a sewage system but contended that he did not have to provide that service.

I respectfully dissent.