No. 43          October 16, 2025          381

IN THE SUPREME COURT OF THE
STATE OF OREGON

Greg JARED,
*Respondent on Review,*

*v.*

Katie HARMON
and all occupants,

*Petitioner on Review.*

(CC 22LT13674) (CA A180239) (SC S071417)

En Banc

On review from the Court of Appeals.*

Argued and submitted May 13, 2025.

Elizabeth Lewis, Oregon Law Center, Portland, argued the cause and filed the brief for petitioner on review. Also on the brief were Emily Rena-Dozier, Oregon Law Center, Portland, and Charles Allen, Legal Aid Services of Oregon, Portland.

Nick R. Blanc, argued the cause for respondent on review.

BUSHONG, J.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

Masih, J., concurred and filed an opinion, in which James, J., joined.

_____

* Appeal from Umatilla County Circuit Court, Jon S. Lieuallen, Judge. 334 Or App 550, 557 P3d 1102 (2024).

**BUSHONG, J.**

This forceable entry and detainer (FED) action requires us to address the interplay between two provisions in the Oregon Residential Landlord and Tenant Act (ORLTA). One provision requires landlords to maintain the rented space in a habitable condition. The other provision requires tenants to keep the premises clean and sanitary. Tenant lived in a recreational vehicle (RV) and rented a space to park it on landlord's farm. The site did not have a system for sewage disposal, and tenant connected the RV's wastewater discharge port to a pipe that dumped raw sewage onto the ground. After the county health department cited landlord for the sewage discharge, he notified tenant that he was terminating the lease for cause and brought this FED action to evict her. Tenant contended in response that any obligation that she had to keep the area clean and sanitary depended on landlord complying with his obligation to provide an appropriate sewage disposal system. Tenant also asserted two counterclaims, seeking to recover damages for landlord's failure to provide a sewage disposal system and safe drinking water.

The trial court ruled in landlord's favor on his FED claim and awarded him possession. The court also ruled in landlord's favor on tenant's habitability counterclaims. A divided panel of the Court of Appeals affirmed. *Jared v. Harmon*, 334 Or App 550, 557 P3d 1102 (2024). We allowed review and now affirm the Court of Appeals decision in part and reverse in part.

As we will explain, landlord's failure to provide a sewage disposal system for the RV site violated his obligation under ORS 90.320 to maintain the rented space in a habitable condition, but that violation did not mean that tenant was free to dump raw sewage onto the ground. By continuing to do so after she discovered the sewage problem, tenant violated her obligation under ORS 90.325 to keep the area clean and sanitary. That violation gave landlord the right to terminate the tenancy and obtain possession despite landlord's habitability violation.

As for tenant's counterclaims, under the ORLTA, a tenant may recover damages for habitability violations only

if the tenant notifies the landlord about the condition causing the violation, unless the landlord already knew or reasonably should have known about that condition. The trial court erred in rejecting tenant's first counterclaim, because the evidence was undisputed that landlord knew that the site did not have a sewage disposal system, and tenant was therefore not required to notify landlord about that condition. However, the trial court did not err in rejecting tenant's second counterclaim because there was no evidence that tenant notified landlord or that he knew or reasonably should have known that the water he made available to the RV was unsafe for drinking.[1]

## I.   BACKGROUND

Because landlord prevailed at trial, we review the evidence presented in the light most favorable to him. *Bennett v. Farmers Ins. Co.*, 332 Or 138, 142, 26 P3d 785 (2001). Tenant and landlord entered into a written rental agreement that allowed tenant to park her RV on landlord's property for one year, in exchange for $400 per month rent. The rental agreement was on a form that landlord had used for other residential property and was not tailored for this RV site. The form included checked boxes indicating both that sewage would be "paid by landlord and included in rent" and that sewage would be "paid by the tenant."

The rented space was on land zoned exclusively for farm use. It was the only space for rent on the property and was located near a "wellhouse" that provided access to water and electricity for the RV site. The space did not have a septic or other sewage disposal system. Tenant disposed of sewage by connecting the RV's wastewater discharge port to a black pipe that emptied raw sewage onto ground covered by underbrush, about 50 feet away from the RV site. Landlord testified at trial that he did not tell tenant

---

[1] As discussed more fully below, landlord contended at trial and on appeal that the habitability requirements in ORS 90.320 do not apply to an RV site pursuant to ORS 90.320(3). The trial court rejected tenant's habitability counterclaims on the grounds that tenant did not meet her burden of proof without expressly addressing the ORS 90.320(3) issue. The Court of Appeals rejected landlord's argument that the habitability requirements do not apply to this RV site under ORS 90.320(3), and as explained below, we agree with the Court of Appeals on that issue.

to connect the RV's wastewater discharge port to that pipe, and that tenant and her boyfriend "put that in" themselves.[2]

Tenant testified that, on September 1, 2022, she discovered that sewage from the RV was being discharged onto the ground after the neighboring landowner had cleared the underbrush away from the end of the pipe. Tenant called the Umatilla County Health Department to complain. Tenant testified that she did not use the black pipe after discovering on September 1 that it discharged sewage onto the ground, and that she instead stored wastewater from her RV in a portable tank that she emptied at a friend's nearby RV park.[3]

A county inspector testified that she visited the site on September 15 and again on September 20. On her first visit, she saw the pipe that was connected to the RV, but she was unable to access the end of the pipe. On her second visit, the inspector was able to see that raw sewage had been discharged from the end of the pipe onto the ground. The inspector then sent landlord a "Notice of Violation" of OAR 340-071-0100 for discharging untreated sewage onto the ground.[4] The notice stated that the RV "must be self-contained" and that its wastewater "must be dumped at an approved disposal facility." The notice specified three actions that must be taken to "come into compliance": (1) Immediately cap the wastewater discharge port on the RV, and cease all discharge of untreated sewage directly onto the ground; (2) clean up the wastewater by applying lime to the areas that had been contaminated with sewage

---

[2] Tenant testified at trial that landlord told her to connect her RV's wastewater discharge port to a black pipe that landlord had provided, and that she had "assumed" that the pipe was connected to a working sewage disposal system until she later discovered that it was dumping raw sewage from the RV onto the ground.

[3] Tenant's testimony was refuted by the testimony of the county inspector, and, as explained below, the trial court's ruling in landlord's favor in effect found the inspector's testimony more credible.

[4] The rule referenced in the "Notice of Violation" provides definitions for wastewater treatment systems. It defines "wastewater" as "sewage," OAR 340-071-0100(174), and "sewage" as "water-carried human and animal wastes," OAR 340-071-0100(140). The operative rule, OAR 340-071-0130(3), prohibits discharging untreated or partially treated wastewater "directly or indirectly onto the ground surface," stating that such a discharge "constitutes a public health hazard and is prohibited."

and fencing off the area if necessary; and (3) report back to the health department.

On September 23—the day after landlord received the notice from the county—landlord's attorney sent tenant a 30-day eviction notice. The eviction notice stated that the tenancy would be terminated for cause if tenant did not "cure" the violation in the county health department's notice—which was attached to the eviction notice—by October 8.

The county inspector returned to the property on October 15 and saw that nothing had changed. The RV's wastewater discharge port was still connected to the black pipe, allowing the RV to continue discharging raw sewage onto the ground.[5] There was no evidence that lime had been applied to the contaminated area or that the area had been fenced off.

Landlord then filed this FED action to evict tenant from the premises.[6] In response to the complaint, tenant denied that she had caused the sewage problem, alleged as a defense that the sewage problem had been caused by landlord's failure to provide a sewage disposal system, and asserted counterclaims for damages and injunctive relief. In her first counterclaim, tenant alleged that landlord had breached his obligation to provide a sewage disposal system as required by ORS 90.320(1)(c)(C) to make the site habitable. In her second counterclaim, tenant alleged that landlord had breached his obligation to provide safe drinking water, again as required by ORS 90.320(1)(c)(D) to make the site habitable. The case proceeded to trial.

At trial, landlord acknowledged that there never was a sewage disposal system for the RV site. He testified that a previous tenant had "carr[ied] the sewage off" site, and he contended that it was tenant's responsibility under ORS

---

[5] Although tenant testified that she stopped using the black pipe after discovering on September 1 that it dumped sewage from the RV onto the ground, she offered no explanation as to why her RV was connected to the black pipe when the county inspector visited the site on September 15, September 20, and October 15.

[6] The eviction complaint form included a box that was checked indicating that landlord was entitled to possession because of a 30-day notice of termination *without* cause, but the notice that was attached to the complaint sought to terminate the tenancy for cause. The parties and courts below all treated landlord's FED action as a "for cause" termination.

90.325 to properly dispose of sewage from the RV. Landlord relied primarily on the county inspector's testimony to establish that tenant had violated ORS 90.325 by continuing to dump raw sewage onto the ground. At the close of landlord's case, tenant moved for an involuntary dismissal of landlord's FED claim under ORCP 54 B(2) (in a case tried to the court, a defendant can move for involuntary dismissal at the close of a plaintiff's case "on the ground that upon the facts and the law the plaintiff has shown no right to relief"). Tenant contended that landlord's claim failed because any obligation that she had under ORS 90.325 to keep the area clean and sanitary was dependent upon landlord complying with his obligation under ORS 90.320 to provide a working sewage disposal system. The trial court denied tenant's motion and, at the end of trial, ruled in landlord's favor on his claim for possession. The court also ruled in landlord's favor on tenant's habitability counterclaims, concluding that tenant had not "met [her] burden" on those counterclaims. Tenant appealed.

On appeal, tenant assigned error to the trial court's denial of her motion for involuntary dismissal of landlord's FED claim and rejection of her habitability counterclaims. In response, landlord contended that he was not required to provide a sewage disposal system for this RV site under ORS 90.320(3). That provision states that the habitability provisions in ORS 90.320, which "reasonably apply only to a structure that is used as a home, residence or sleeping place," do not apply to a tenant-owned RV. Landlord contended that sewage disposal was a habitability requirement that reasonably applied "only to a structure" that is used as a residence, and thus, that requirement did not apply to tenant's RV. Landlord further contended that, under ORS 90.360, he could not be liable on tenant's counterclaims, because tenant had failed to give him notice of the sewage discharge and drinking water problems.

A divided panel of the Court of Appeals affirmed the trial court's rulings. The court concluded that the habitability exception for tenant-owned RVs in ORS 90.320(3) did not relieve landlord of the obligation to provide an appropriate sewage disposal system, but the court nonetheless held that the trial court did not err in denying tenant's motion

for involuntary dismissal of landlord's FED claim. The court explained that landlord's violation of his duty to provide sewage disposal "d[id] not excuse tenant of her duty under ORS 90.325" to keep the area clean and sanitary. *Jared*, 334 Or App at 560.

With respect to tenant's habitability counterclaims, the court noted that tenant's "right to a remedy under ORS 90.360" depended on whether tenant had notified landlord about the habitability problems, unless landlord already knew or reasonably should have known about those problems. *Id*. The court concluded that the trial court did not err in rejecting the counterclaims, because (1) there was evidence to support the conclusion that landlord was not aware that sewage from tenant's RV was being discharged onto the ground until he received notice from the county; and (2) there was evidence to support the conclusion that tenant *was* aware of the sewage discharge even before she received the eviction notice, but she did not notify landlord and continued to dump sewage from the RV onto the ground. *Id*. at 560-61.

Judge Shorr dissented. The dissent concluded that landlord did not establish a right to possession on his FED claim, because he did not prove that tenant "had failed to keep areas under *her* control free of filth nor that tenant was responsible for causing the problem." *Id*. at 562 (Shorr, J., dissenting) (emphasis in original). The dissent further opined that the trial court had erred in dismissing tenant's habitability counterclaims, because "it cannot be said" from the evidence that landlord "neither knew nor reasonably should have known of the condition that constituted the non-compliance" with the habitability requirements, as required by ORS 90.360(2) to preclude tenant from recovering damages. *Id*.

We allowed tenant's petition for review to address the interplay between the rights and obligations that the ORLTA places on landlords and tenants in this context.

## II.   DISCUSSION

Resolving the issues presented on review requires us to interpret the relevant provisions of the ORLTA, applying our traditional methodology focusing on text, context,

and any legislative history that is helpful to our inquiry. *Jackson v. KA-3 Associates, LLC*, 374 Or 1, 8, 573 P3d 396 (2025) (citing *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)). We review the interpretation of a statute for legal error. *State ex rel Torres-Lopez v. Fahrion*, 373 Or 816, 822, 572 P3d 1045 (2025). We begin with an overview of the pertinent ORLTA provisions before turning to the specific provisions in dispute.[7]

A.   *Statutory Overview*

The ORLTA was enacted in 1973 "to clarify and restate the rights and obligations of tenants and landlords." *L & M Investment Co. v. Morrison*, 286 Or 397, 405, 594 P2d 1238 (1979). Under the ORLTA, the terms of a written rental agreement generally govern the rights and obligations of the parties, except as otherwise provided in the ORLTA or other applicable law. *See* ORS 90.220(1) ("A landlord and a tenant may include in a rental agreement terms and conditions not prohibited by this chapter or other rule or law including * * * provisions governing the rights and obligations of the parties"). The ORLTA imposes general and specific obligations on both landlords and tenants and provides remedies for violating those obligations.

One of the basic requirements imposed on landlords is the obligation to maintain the rented space in a "habitable condition." ORS 90.320; *Eddy v. Anderson*, 366 Or 176, 178, 458 P3d 678 (2020). The statute provides that a landlord "shall at all times during the tenancy maintain the dwelling unit in a habitable condition." ORS 90.320(1). The habitability requirements are stated in the negative. Rather than specifying the attributes that the dwelling unit must have, the habitability requirements specify the "attributes [that] a dwelling unit must not substantially lack." *Jackson*, 374 Or at 8-9. Among other things, a dwelling unit "shall be considered unhabitable" if it substantially lacks a "water supply approved under applicable law that is * * * [c]onnected to a sewage disposal system approved under applicable law." ORS 90.320(1)(c)(C). The statute includes a limited

---

[7] We cite to the current version of the ORLTA in this opinion. The 2021 version that was in effect at the time of the events at issue in this case has been amended since then, but none of those amendments are relevant to this case.

exception, stating that the habitability requirements "that reasonably apply only to a structure that is used as a home, residence or sleeping place" do not apply to, among other things, an RV that is owned by the tenant. ORS 90.320(3).

ORS 90.360, formerly ORS 91.800, provides a tenant with "two separate and independent remedies" to address a landlord's failure to comply with either the rental agreement "or the landlord's obligation to maintain the premises in a habitable condition." *Eddy*, 366 Or at 179. First, ORS 90.360(1)(a) allows a tenant to terminate a lease after giving the landlord a written "fix or I leave" notice and an opportunity to cure the violation. *See Eddy*, 366 Or at 179 (summarizing provision).[8] Second, ORS 90.360(2) allows a tenant to "recover damages and obtain injunctive relief" for the landlord's noncompliance with habitability requirements. However, the tenant is not entitled to recover damages for the landlord's failure to comply with habitability requirements if the tenant does not notify the landlord of the problem and the landlord "neither knew nor reasonably should have known of the condition that constituted the noncompliance." ORS 90.360(2). Additionally, the tenant is not entitled to terminate the rental agreement or recover damages "for a condition caused by the deliberate or negligent act or omission of the tenant or other person on the premises with the tenant's permission or consent." ORS 90.360(4).

ORS 90.365 gives a tenant additional remedies if the landlord "intentionally or negligently fails to supply any essential service." For a tenancy "consisting of rental space for a *** recreational vehicle owned by the tenant[,]" the term "essential service" means "sewage disposal *** and, if required by applicable law, any drainage system" and "[a]ny other service or habitability obligation imposed by the rental agreement or ORS 90.730, the lack or violation of which *** makes the rented space unfit for occupancy." ORS 90.100(15) (b)(A) and (B).[9]

---

[8] Under ORS 90.360(1), if the landlord's habitability violation is a failure to supply an essential service, the landlord must cure the violation within seven days. The landlord has 30 days to cure all other violations.

[9] ORS 90.730 lists a landlord's obligations with respect to a manufactured dwelling park or a marina. It is undisputed that landlord's property in this case was not a "manufactured dwelling park." *See* ORS 90.100(28) (defining

Under ORS 90.365, a tenant's remedies for a land-lord's failure to supply an essential service include the right to procure the service and deduct the cost from the rent (ORS 90.365(1)(a)); to recover damages based on upon the diminution in the fair rental value of the dwelling unit (ORS 90.365(1)(b)); or to stop paying rent, procure substitute housing, and recover as damages the cost of substitute housing in excess of the rent (ORS 90.365(1)(c)). However, a tenant's rights under ORS 90.365 "do not arise if the condition was caused by the deliberate or negligent act or omission of the tenant or a person on the premises with the tenant's consent." ORS 90.365(6).

The ORLTA also includes specific provisions that address a tenant's counterclaim in a landlord's action for possession or rent. ORS 90.370. As relevant here, ORS 90.370(1)(a) requires a tenant to prove that, before the landlord filed an FED action, the landlord "reasonably had or should have had knowledge" of "facts that constitute the tenant's counterclaim." The net effect is that a tenant has an "implicit withholding remedy" that allows the tenant to withhold rent if the landlord is not in compliance with the habitability requirements, and, "if the landlord commences an FED action, the tenant can counterclaim" for diminished rental value damages. *Eddy*, 366 Or at 181 (citing *Napolski v. Champney*, 295 Or 408, 418, 667 P2d 1013 (1983)).

A tenant's specific duties are set out in ORS 90.325. As relevant here, ORS 90.325(1)(b) requires the tenant to "[k]eep all areas of the premises under control of the tenant in every part as clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin, as the condition of the premises permits and to the extent that the tenant is responsible for causing the problem." The statute further requires a tenant to "cooperate to a reasonable extent in assisting the landlord in any reasonable effort

---

"manufactured dwelling" to include a "residential trailer"); ORS 90.100(29) (defining "manufactured dwelling park" as "a place where four or more manufactured dwellings are located, the primary purpose of which is to rent space or keep space for rent to any person for a charge or fee"). Also, landlord's property was not a "recreational vehicle park." *See* ORS 90.100(40) (referring to ORS 197.492 for the definition of a "recreational vehicle park"; ORS 197.492(2)(a) (defining "recreational vehicle park" as a place where two or more RVs are located within 500 feet of each other on a single lot, tract, or parcel of land).

to remedy the problem," ORS 90.325(1)(b), and to "[d]ispose from the dwelling unit all ashes, garbage, rubbish and other waste in a clean, safe and legal manner," ORS 90.325(1)(c).

The ORLTA includes specific remedies for landlords if a tenant fails to comply with the tenant's obligations under ORS 90.325. As applicable here, ORS 90.392(1) provides: "Except as provided in this chapter, after delivery of written notice a landlord may terminate the rental agreement for cause and take possession as provided in ORS 105.100 to 105.168, unless the tenant cures the violation as provided in this section." One of the specified "causes for termination" is a "[m]aterial violation by the tenant under ORS 90.325." ORS 90.392(2)(b). However, the rental agreement does not terminate if the tenant "cures the violation" by the date specified in the notice, which must be at least 14 days after delivery of notice of the violation. ORS 90.392(4)(a). If the tenant does not cure the violation, "the rental agreement terminates as provided in the notice." ORS 90.392(4)(b). A landlord may pursue any one or more of the remedies in the ORLTA "simultaneously or sequentially," and, in addition to terminating the rental agreement under ORS 90.392, the landlord may recover damages and obtain injunctive relief for the tenant's noncompliance with ORS 90.325. ORS 90.401(1) and (2).

The ORLTA includes several definitions that help us resolve this case. "Premises" is defined to mean "[a] dwelling unit and the structure of which it is a part and facilities and appurtenances therein" and the "[g]rounds, areas and facilities held out for the use of tenants generally or the use of which is promised to the tenant[.]" ORS 90.100(37)(a), (b). With respect to a space rented for a "recreational vehicle," the term "dwelling unit" means "the space rented and not the *** recreational vehicle *** itself." ORS 90.100(14).[10] And as noted above, "sewage disposal" for a rental space for an RV owned by the tenant is expressly included in the definition of the term "essential service." ORS 90.100(15)(b)(A).

---

[10] "Recreational vehicle" has the meaning "given that term in ORS 174.101." ORS 90.100(39). ORS 174.101(3) defines "recreational vehicle" as "a vehicle with or without motive power that is designed for use as temporary living quarters[.]" It is undisputed that tenant lived in a "recreational vehicle" as defined in those statutes.

B.  *Application to This Case*

As stated, this case involves the interplay between landlord's habitability obligations under ORS 90.320 and tenant's obligation under ORS 90.325 to keep the premises sanitary and free from filth. This case addresses how those respective obligations affect (1) landlord's right to terminate the rental agreement and evict tenant, and (2) tenant's right to recover damages. We begin with landlord's FED claim to evict tenant and obtain possession of the rented space.

1.  *Landlord's FED claim*

Landlord sought to evict tenant based on tenant's alleged violation of her obligation under ORS 90.325(1)(b) to maintain the premises in a sanitary condition.[11] That statute provides:

"(1)   The tenant shall:

"* * * * *

"(b)   Keep all areas of the premises *under control of the tenant* in every part as clean, sanitary, and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin, *as the condition of the premises permits and to the extent that the tenant is responsible for causing the problem.* The tenant shall cooperate to a reasonable extent in assisting the landlord in any reasonable effort to remedy the problem."

(Emphases added).

Tenant contends that any obligation that she had to keep the premises clean and sanitary depended upon landlord's compliance with his habitability obligation to supply an appropriate sewage disposal system. Tenant further contends that she did not violate ORS 90.325(1)(b), because (1) the area where the sewage was dumped was not a part of the premises that was under her control; (2) the "condition of the premises" did not "permit" her to avoid dumping

---

[11] Because nonpayment of rent was not an issue in this case, any damages that tenant could recover from landlord's failure to provide essential services or to maintain the premises in a habitable condition could not offset any rental payments that were due and avoid eviction for nonpayment of rent. As a result, the potential availability of a damages remedy does not affect whether landlord is entitled to possession on his FED claim.

sewage onto the ground, because landlord did not provide a sewage disposal system, as he was required to do; and (3) landlord—not tenant—was therefore "responsible for causing the problem" by failing to provide for a sewage disposal system for the RV site.

In response, landlord contends—relying on the brief he filed in the Court of Appeals—that he was not required to provide a sewage disposal system for this RV site under the exception to the habitability requirements in ORS 90.320(3). As we will explain, we agree with the Court of Appeals that ORS 90.320(3) did not relieve landlord of his obligation to supply a sewage disposal system for this RV site. That does not mean that tenant prevails on the FED claim, because we also agree with the Court of Appeals that landlord's habitability violation did not excuse tenant's obligation under ORS 90.325 to refrain from dumping raw sewage from the RV onto the ground, and that tenant's violation allowed landlord to terminate the tenancy for cause.

We begin with landlord's contention that ORS 90.320(3) relieved him of the obligation to provide a sewage disposal system, as required by ORS 90.320(1)(c)(C) to make the site habitable. Under ORS 90.320(3), the habitability requirements in ORS 90.320(1) "that reasonably apply only to a structure" that is used as a residence do not apply to an RV that is owned by the tenant. Landlord contends that the habitability obligation to provide an appropriate sewage disposal system is a requirement "that reasonably applies only to a structure" that is used as a residence and, thus, does not apply to this RV site. We disagree, because multiple statutory provisions make clear that providing appropriate sewage disposal is an obligation that also applies to tenant-owned RVs.

Some habitability requirements listed in ORS 90.320(1) reasonably apply to only to a structure used as a residence, but sewage disposal is not one of them.[12] Sewage

---

[12] See e.g., ORS 90.320(1)(a) (waterproofing and weather protection of "roof and exterior walls, including windows and doors"); ORS 90.320(1)(b) (plumbing facilities that conform to applicable law); ORS 90.320(1)(d) (adequate heating facilities); ORS 90.320(1)(h) (floors, walls, ceilings, and stairways maintained in good repair); ORS 90.320(1)(j), (k) (working smoke alarms and carbon monoxide alarms); ORS 90.320(1)(*l*) (working locks for doors and latches for windows); ORS 90.320(1)(m) (air conditioning or other cooling system).

disposal is an "essential service" that a landlord must supply to an RV *space* that holds a tenant-owned RV. ORS 90.100 (15)(b)(A). Thus, the obligation to provide an appropriate sewage disposal system is not an obligation that reasonably applies only to a *structure* that is used as a residence.

Landlord contends that ORS 90.100(15)(b)(A) is a definitional provision that does not give rise to any *obligation* on landlord's part, but that argument ignores the fact that both ORS 90.360(1) and 90.365(1) give tenants the right to certain remedies if a landlord fails to supply an "essential service."[13] The fact that those statutes give a tenant remedies for a landlord's failure to supply an essential service means that landlords are obligated to provide those services. The obligation is implicit in the tenant's right to a remedy. Otherwise, the statutory remedy—and the definition of "essential service" to specifically include sewage disposal for an RV site—would be meaningless.

In addition, ORS 197.493(1)(b)(C) provides that state and local governments may not prohibit locating RVs in an RV park if they are lawfully connected to a sewage disposal system.[14] That confirms that a connection to a sewage disposal system is something that can be provided to an RV space and is not something that reasonably applies *only* to a structure. Because a sewage disposal system is not a habitability requirement that reasonably applies only to a "structure" under Oregon law, the exception in ORS 90.320(3) does not apply.

---

[13] A landlord's failure to supply an "essential service" is a habitability violation under ORS 90.320(1). The exception to the habitability requirements provided in ORS 90.320(3) would, if applicable here, preclude tenant from a remedy under ORS 90.360(1) and 90.365(1), because remedies are available under both provisions only if the landlord's failure to supply an essential service violates ORS 90.320. But, as explained in this opinion, we agree with the Court of Appeals that the exception in ORS 90.320(3) does not apply here.

[14] As noted above, an RV park is a parcel of land holding two or more RVs. ORS 197.492(2)(a). Aside from the ORLTA provisions discussed in this opinion, the legislature has not specifically addressed the sewage disposal and other habitability requirements that apply to a single RV site. Given the prevalence of people using RVs as their residence and the need for them to locate their RVs lawfully, the legislature could authorize private landowners to allow a single RV to park on their land without providing a sewage disposal system if RV owners dispose of their sewage at an appropriate sewage disposal facility. The existing ORLTA provisions that apply to RV sites do not provide that authorization.

Turning to tenant's contentions, we do not agree that a tenant's obligations under ORS 90.325 are contingent on a landlord's compliance with the habitability requirements in ORS 90.320. Tenant suggests that the text, context, and legislative history of those provisions show that the legislature intended to make a landlord's compliance with the habitability requirements of ORS 90.320 a "condition precedent" to a tenant's obligations under ORS 90.325. We disagree.

The text of ORS 90.320 provides that a landlord's obligations to maintain the premises in a habitable condition apply "at all times" during the tenancy, while a tenant's obligations under ORS 90.325 are more limited and qualified, as tenant points out. But that does not mean that a landlord's compliance with the habitability requirements is a condition precedent to a tenant's obligations, or that those respective obligations are otherwise connected. It just means that the respective obligations of landlords and tenants under the ORLTA are different.

The context confirms that a tenant's compliance with ORS 90.325 was not intended to be dependent on a landlord's compliance with ORS 90.320. The legislature expressly made other provisions of the ORLTA conditioned on each other; for example, we have recognized that, under ORS 90.250, a tenant's obligation to pay rent is "reciprocal" to and thus dependent upon a landlord's obligation to maintain rental properties in a habitable condition. *Napolski v. Champney*, 295 Or 408, 415-16, 667 P2d 1013 (1983).[15] But the legislature did not make a tenant's compliance with ORS 90.325 contingent on a landlord's compliance with ORS 90.320.

In addition, as discussed above, a tenant's remedies under ORS 90.360 are subject to establishing the landlord's failure to comply with one or more of the habitability requirements in ORS 90.320. And, if the landlord's habitability violation is a failure to supply an essential service, the ORLTA gives tenants additional remedies under ORS 90.365. The availability of those statutory remedies is directly connected

---

[15] ORS 90.250 provides in pertinent part: "A rental agreement * * * may not permit the receipt of rent free of the obligation to comply with ORS 90.320(1)[.]"

to a landlord's violation of the habitability requirements in ORS 90.320. But nothing in the ORLTA makes a tenant's duty to comply with ORS 90.325 dependent on the landlord's compliance with those habitability requirements. Instead, the provisions simply describe the respective, independent obligations of landlords and tenants.

The legislative history does not suggest that those obligations were intended to be interdependent. The statute establishing a landlord's habitability obligations, which is now codified as ORS 90.320, was enacted as part of the bill that created the ORLTA, Senate Bill (SB) 159 (1973). *Jackson*, 374 Or at 14 (citing Or Laws 1973, ch 559, § 14).[16] SB 159 also established the tenant's obligations that are now codified as ORS 90.325. Or Laws 1973, ch 559, § 15.[17] Nothing in the legislative history of SB 159 suggests that a tenant's compliance with their obligations was intended to be dependent upon a landlord first complying with their habitability obligations, unless the landlord's failure prevents a tenant from complying as a factual matter.

The ORLTA was modeled on the Uniform Residential Landlord and Tenant Act (1972) (URLTA). *Jackson*, 374 Or at 14. As we explained in *Jackson*, the habitability provisions in the bill as originally introduced "mirrored URLTA section 2.104." *Id*. During the 1973 legislative session, landlord advocates expressed concerns that the wording of URLTA section 2.104 was overbroad and vague. *Id*. at 15. In response, the legislature amended the habitability provision to "add specificity and clarity regarding the scope of a landlord's habitability obligations." *Id*. at 16. But the bill as introduced and as ultimately enacted did not make a tenant's obligations dependent upon a landlord's compliance with its habitability obligations.

---

[16] The legislature amended ORS 90.320, formerly ORS 91.770, in 1989 to add a provision that specifically required landlords to provide a water supply that is "[m]aintained so as to provide safe drinking water[.]" Or Laws 1989, ch 506, § 8. The legislature added subsection (3) to ORS 90.320 in 1995. Or Laws 1995, ch 559, § 15.

[17] The legislature amended ORS 90.325(1)(b) in 1999 to include keeping the premises free from "rodents and vermin" as the condition of the premises permits. That amendment also added the phrase "and to the extent that the tenant is responsible for causing the problem" at the end of ORS 90.325(1)(b). Or Laws 1999, ch 603, § 20

That conclusion is supported by the URLTA provisions that correspond to the respective obligations of landlords and tenants in the ORLTA. The ORLTA provision that became ORS 90.325 was patterned after URLTA section 3.101.[18] Nothing in the URLTA suggests that a tenant's obligations under section 3.101 depended upon a landlord's compliance with their habitability obligations under section 2.104. The official commentary to those provisions states that they simply set out the respective obligations of landlords and tenants without suggesting that the landlord's obligations are a condition precedent to the tenant's obligations or making the tenant's obligation depend upon the landlord's compliance. For example, the official commentary to URLTA section 2.104 states:

> "Generally, duties of repair and maintenance of the dwelling unit and the premises are imposed upon the landlord by this section. Major repairs, even access, to essential systems outside the dwelling unit are beyond the capacity of the tenant. Conversely, duties of cleanliness and proper use within the dwelling unit are appropriately fixed upon the tenant (see Sections 3.101 and 3.102)."

Commissioners' Commentary to URLTA § 2.104.

The comment to URLTA section 3.101 states: "This section, the converse of Section 2.104, establishes minimum duties of tenants consistent with public standards of health and safety." Commissioners' Commentary to URLTA § 3.101.

Thus, the two provisions were designed to be the converse of each other, not dependent upon each other. Nothing in those URLTA provisions suggests that a tenant's obligation to keep the premises clean and sanitary would apply *only if* the landlord first complied with their habitability obligations. We conclude that a tenant's obligation

---

[18] URLTA section 3.101 provides in pertinent part:

"A tenant shall:

"(1) Comply with all obligations primarily imposed upon tenants by applicable provisions of building and housing codes materially affecting health and safety;

"(2) Keep that part of the premises that he occupies and uses as clean and safe as the condition of the premises permit;

"(3) Dispose from his dwelling unit all ashes, garbage, rubbish, and other waste in a clean and safe manner[.]"

to comply with ORS 90.325 is not dependent upon a land-lord's compliance with the habitability requirements in ORS 90.320. [19]

   We also disagree with tenant that, as a factual mat-ter, this location did not preclude her from dumping sewage from the RV onto the ground. Although the evidence at trial established that sewage from the RV was discharged onto the ground about 50 feet away from the space that tenant had rented—and thus outside the area under tenant's con-trol—the RV itself was under tenant's control. Therefore, it was entirely within tenant's control to disconnect the pipe and cap the wastewater discharge port on her RV to avoid dumping raw sewage onto the ground. Indeed, tenant tes-tified that she had done that. Although tenant had some remedies for landlord's failure to provide a sewage disposal system—an essential service for the RV site—that "condi-tion of the premises" did not *prevent* tenant from capping the discharge port on the RV and transporting sewage off-site to an appropriate disposal facility. Thus, the condition of the premises "permit[ted]"—within the meaning of ORS 90.325(1)(b)—tenant to take those actions to stop dumping raw sewage onto the ground.

   As for responsibility for causing the problem—a factual issue—the trial court, by ruling in landlord's favor, in effect, found that tenant was responsible for causing the problem. There is evidence in the record to support that finding. For example, tenant acknowledged that she could have capped the wastewater discharge port on her RV, stored the sewage in a portable tank, and emptied the tank at an approved disposal facility. Tenant testified that that is what she did after she discovered the sewage disposal prob-lem on September 1. But that testimony was refuted by the county inspector's testimony that, when she inspected the site on three separate occasions *after* September 1, the RV's wastewater discharge port was connected to the pipe that discharged raw sewage onto the ground. By ruling in land-lord's favor, the trial court in effect found that the county

---

[19] There may be instances where, as a factual matter, a landlord's failure to comply with a habitability requirement prevents a tenant from complying with one or more of the obligations in ORS 90.325, but the trial court did not make that factual finding in this case, and nothing in the record compels such a finding.

inspector's testimony was more credible than tenant's testimony on that point.

In some respects, landlord and tenant were *both* responsible for causing the sewage problem. Landlord was responsible because he did not provide an essential service—an appropriate sewage disposal system—for the site. Tenant was responsible because she did not cap the wastewater discharge port on her RV and continued to dump raw sewage onto the ground. Again, the ORLTA gave tenant some options to address landlord's failure, but continuing to dump raw sewage onto the ground was not one of them. As discussed above, under ORS 90.325(1)(c), tenant was required to dispose of waste from the RV in a clean, safe, and legal manner. Under ORS 90.360(4) and 90.365(6), a condition caused by the deliberate or negligent act or omission of the tenant eliminates the remedies that would otherwise be available to the tenant. Thus, tenant was not free to continue dumping raw sewage onto the ground.

The fact that the black pipe emptied onto the ground 50 feet away from the RV does not mean that tenant had no obligation under ORS 90.325 to keep that area clean and sanitary. As noted above, "premises" is defined to include areas appurtenant to the dwelling unit and other grounds and areas made available to the tenant. ORS 90.100(37). Although a tenant does not have an affirmative obligation to keep those appurtenant areas clean and sanitary from waste deposited by others, a tenant does have an obligation to refrain from depositing the tenant's own waste onto those appurtenant areas. *See* ORS 90.325(1)(c) (requiring tenant to "[d]ispose from the dwelling unit all ashes, garbage, rubbish and other waste in a clean, safe and legal manner").

Accordingly, we conclude that, by not capping the RV's wastewater discharge port and continuing to dump raw sewage onto the ground after she discovered the problem, tenant violated her obligation under ORS 90.325(1)(b) to keep the premises clean and sanitary. Therefore, under ORS 90.392, landlord was entitled to terminate the rental agreement for cause and obtain possession of the premises, unless tenant cured the violation.

Although tenant testified that she stopped using the black pipe after she discovered that it was discharging sewage from the RV onto the ground, tenant does not contend that she cured the sewage disposal problem. If tenant had capped the wastewater discharge port *and* disposed of the RV's sewage in a clean, safe, and lawful manner, that would have cured the part of the violation specified in the eviction notice that was under tenant's control, thereby defeating landlord's FED claim. But, because tenant did not take those actions and continued to use the black pipe to discharge sewage from her RV onto the ground in violation of her obligation under ORS 90.325, landlord was entitled to terminate the rental agreement and obtain possession of the rented space.

That does not mean that tenant had no recourse. Tenant could have capped the discharge port, stored the sewage in a storage tank, and then transported it for disposal at an appropriate sewage disposal facility, as stated in the county's notice. Because sewage disposal is an "essential service" for an RV site, if tenant had taken those actions, she could have deducted the costs she incurred for sewage disposal from her rent. ORS 90.365(1)(a). Or she could have recovered damages equal to the reduction in rental value of the RV site caused by landlord's failure to provide that essential service. ORS 90.365(1)(b). In addition, tenant may have had remedies under ORS 90.360 because landlord's failure to provide an appropriate sewage disposal system for the RV site was a habitability violation under ORS 90.320.[20] But the availability of those remedies did not relieve tenant of her obligation under ORS 90.325 to cap the wastewater discharge port on her RV and stop discharging raw sewage onto the ground.

Accordingly, we agree with the Court of Appeals that the trial court did not err in denying tenant's motion for involuntary dismissal of landlord's FED claim. We turn to tenant's habitability counterclaims.

---

[20] As the concurring opinion points out, the availability of remedies that require expenditures by a tenant may not be meaningful to tenants who live in an RV and do not have the financial resources to incur those expenses at the outset, even if the tenant is able to recover those costs from the landlord. 374 Or at 405 (Masih, J., concurring).

2.   *Tenant's habitability counterclaims*

As noted above, ORS 90.360(2) allows a tenant, among other remedies, to recover damages for a landlord's failure to comply with their obligation under ORS 90.320 to maintain the premises in a habitable condition. Tenant's first counterclaim alleged that landlord had failed to provide a water supply that is connected to an appropriate sewage disposal system as required by ORS 90.320(1)(c)(C). Tenant's second counterclaim alleged that landlord had failed to provide a water supply that was "[m]aintained so as to provide safe drinking water" as required by ORS 90.320(1)(c)(D).

Tenant sought to recover damages for those violations under ORS 90.360(2). Landlord contended at trial that a damage remedy was not available under that statute because tenant had failed to notify landlord about the sewage discharge and drinking water problems, as required by ORS 90.360(2). The relevant text of that statute provides as follows:

"(2)   Except as provided in this chapter, the tenant may recover damages * * * for any noncompliance by the landlord with * * * ORS 90.320 * * *. The tenant shall not be entitled to recover damages for a landlord noncompliance with ORS 90.320 * * * *if the landlord neither knew nor reasonably should have known of the condition that caused the noncompliance* and:

"(a)   The tenant knew or reasonably should have known of the condition and failed to give actual notice to the landlord in a reasonable time prior to the occurrence of the * * * diminution in rental value or other tenant loss resulting from the noncompliance; or

"(b)   The condition was caused after the tenancy began by the deliberate or negligent act or omission of someone other than the landlord or a person acting on behalf of the landlord."

(Emphasis added).

Here, landlord testified at trial that he knew all along that the rented space did not have any sewage disposal system. Landlord's failure to provide an appropriate sewage disposal system was "the condition that caused the

noncompliance" with the habitability requirement in ORS 90.320(1)(c)(C), not the actual discharge of sewage from the RV onto the ground. Because landlord already knew that the RV site did not have an appropriate sewage disposal system—thus making the space unhabitable—tenant was not required to notify landlord of that condition. It follows that tenant was entitled to recover damages on her first counterclaim under ORS 90.360(2) for landlord's failure to comply with that habitability requirement. The trial court erred in ruling in landlord's favor on that counterclaim.

We reach the opposite conclusion regarding tenant's second counterclaim. Tenant testified at trial that the water supplied by the wellhouse was "bad" from the outset of her tenancy. She testified that she bought bottled water for drinking and used the water from the wellhouse only for showering and doing her laundry. There was no evidence in the record that tenant ever notified landlord about a problem with the drinking water, nor is there any evidence that landlord knew or reasonably should have known that the water from the wellhouse was not safe for drinking. Accordingly, the evidence at trial supported the trial court's conclusion that tenant had failed to meet her burden to establish a right to recover damages under ORS 90.360(2) on her second counterclaim.

## III.   CONCLUSION

The trial court did not err in denying tenant's motion for involuntary dismissal of landlord's FED claim and rejecting tenant's second habitability counterclaim, but it erred in ruling in landlord's favor on tenant's first habitability counterclaim.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

**MASIH, J.**

As explained in the majority opinion, this action under the Oregon Residential Landlord and Tenant Act (ORLTA) requires us to address the interplay between the

obligations of a landlord under ORS 90.320 to maintain a RV rental space in a "habitable condition" and the duties of a tenant under ORS 90.325(1)(b) to keep all areas of the premises under the tenant's control as clean and sanitary "as the condition of the premises permits and to the extent that the tenant is responsible for causing the problem." Landlord filed this forcible entry and detainer (FED) action to evict tenant from the rented RV space after tenant continued discharging untreated sewage from her RV onto the ground in violation of a notice issued by the Umatilla County Health Department to stop such discharge. Tenant denied that she had caused the sewage problem, alleged as a defense that the sewage problem had been caused by landlord's failure to provide a sewage disposal system, and asserted counterclaims for damages and injunctive relief.

I agree with the majority opinion that landlord's failure to provide a sewage disposal system for the rented RV space violated his obligation under ORS 90.320(1)(c)(C) to maintain the rented space in a habitable condition. And I agree with the majority opinion that the trial court erred in rejecting tenant's counterclaim for violation of ORS 90.320, because the evidence was undisputed that landlord knew that the RV space he had rented to tenant did not have a sewage disposal system, so tenant was not required to notify landlord about that condition to pursue her remedy under ORS 90.360(2) (permitting recovery of damages for violation of ORS 90.320 unless "landlord neither knew nor reasonably should have known of condition"). I also agree with the majority opinion that the trial court did not err in rejecting tenant's additional counterclaim because there was no evidence that tenant notified landlord or that he knew or reasonably should have known that the water he made available to the RV was unsafe for drinking. I write separately solely to address the majority opinion's conclusion and reasoning as to landlord's FED claim.

The majority opinion concludes that landlord's habitability violation—the failure to provide the essential service of a connection to a sewage disposal system—did not mean that tenant was free to dump raw sewage onto the ground and that, by continuing to do so after she was on notice that

the site had no sewage disposal system, tenant violated her obligation under ORS 90.325(1)(b) to keep the area clean and sanitary. In support of that conclusion, the majority opinion relies, in part, on testimony at trial that tenant had the ability to store wastewater from her RV in a portable tank and to empty it at a friend's nearby RV park[1] but failed to do so and, in part, on tenant's failure to pursue the legal remedies available to tenants under ORS 90.365 for the failure of a landlord to provide essential services. Those remedies include the right to procure reasonable amounts of the service and deduct the cost from the rent (ORS 90.365(1)(a)); to "[r]ecover damages based upon the diminution in the fair rental value of the dwelling unit" (ORS 90.365(1)(b)); or to stop paying rent, procure substitute housing during the period of the landlord's noncompliance, and recover as damages the cost of substitute housing in excess of the rent (ORS 90.365(1)(c)).[2] According to the majority opinion, when faced with the lack of a connection to a sewage disposal system, tenant's options were essentially to store her raw sewage to dispose of off-premises and to pursue those legal remedies or to terminate the rental agreement as provided in ORS 90.360.

However, not every tenant will have the reasonable ability, whether due to financial or other circumstances, to pursue any of those remedies. And in my view, the ORLTA does not require a tenant to do so as part of their duties. *See* ORS 90.325 (listing tenant duties). In this case, even after notice from the county health department, landlord provided tenant no options on the premises to dispose of the waste in a clean and sanitary manner.

A tenant's duty under ORS 90.325(1)(b) to keep the premises in their control clean and sanitary is qualified

---

[1] Tenant testified that this is exactly what she began doing after she learned that the black pipe to which she had connected her RV did not connect to a sewage disposal system. However, as the majority opinion explains, tenant offered no explanation as to why her RV was still connected to the black pipe, allowing the RV to continue discharging raw sewage onto the ground, when the county inspector returned to the site after that date.

[2] In addition to the remedies available to tenants under ORS 90.365(1), any failure of the landlord to "supply any essential service, the lack of which poses an imminent and serious threat to the tenant's health, safety, or property," may also permit the tenant to terminate the rental agreement within 48 hours of notifying the landlord, if not remedied. ORS 90.365(2).

by the following: (1) "as the condition of the premises permits," and (2) "to the extent that the tenant is responsible for causing the problem." Accordingly, in situations such as these, the question of who "caused" the premises to be unsanitary is an issue of fact that must be resolved. I agree with the majority that, in this case, the record could be read to suggest that the trial court engaged in that factual inquiry, and it could be reasonably read to support the trial court's implicit finding that the problem was caused jointly by landlord and tenant. Recognizing that the conclusion of this case is somewhat dependent on its facts, the majority opinion acknowledges that "[t]here may be instances where, as a factual matter, a landlord's failure to comply with a habitability requirements prevents a tenant from complying with one or more of the obligations in ORS 90.325, but the trial court did not make that factual finding in this case and nothing in the record compels such a finding." 374 Or at 399 n 19. I appreciate that acknowledgment and concur in the majority based solely on the unique facts of this case.

James, J., joins in this concurring opinion.